MINNIE L. WRIGHT vs. BOSTON AND ALBANY RAILROAD
COMPANY.

Middlesex.     March 12. — July 3, 1886.     W. ALLEN & HOLMES, JJ.,
absent.

In an action against a railroad corporation for an injury sustained by the plaintiff
while crossing the tracks of the defendant railroad, there was evidence that the
plaintiff approached the tracks from the northward by a path which did not
connect with a public street, but which for some distance northward of the
tracks had been used by the public for twenty-five years, and at a more remote
point, in the same direction, for fifteen or sixteen years; that the path was from
three to five feet in width, and well defined; that on each side of the path,
near the railroad, there was a ridge two or three feet in height, caused by dirt
being thrown up in cleaning ditches on the side of the railroad, with a clear
passageway left for the path through the ridge; that there was no fence or
other obstruction to passing across the railroad from the path, and no objection
had been made by the servants of the defendant to persons crossing there, ex-
cept when cars were approaching; that, when freight cars were left standing on
the tracks, openings were sometimes left between them opposite the path; that
at some distance to the westward of the place where the path crossed the tracks
was a covered culvert, and between the path and the culvert was a well-worn
and smooth space between two lines of tracks; that to the westward of the culvert
there was planking between the rails, and a path on the south side of the tracks
near the platform of a station of the railroad; and that some persons using
the path when coming from the northward, on reaching the tracks, went by this
space between the two tracks to the path on the south side, and others went in
different directions. Held, that these facts would not warrant the jury in find-
ing that the defendant had held out an inducement or invitation to use the path
to cross the tracks; and that, in the absence of evidence that the injury to the
plaintiff was occasioned by the wilful or reckless misconduct of the defendant
or its agents, the action could not be maintained.

TORT for personal injuries occasioned to the plaintiff by the
alleged negligence of the defendant. Trial in the Superior
Court, before *Brigham*, C. J., who reported the case for the
determination of this court, in substance as follows:

There was evidence on the part of the plaintiff tending to
prove the following facts:

On October 13, 1882, the plaintiff, being then between six
and seven years of age, while going to school and crossing the
track of the defendant's railroad in Natick, received the injuries
complained of. At the time of the injury, the plaintiff had
entered upon said track from a path, by which she had come
from her father's house on the north side of the track, and was

intending to cross the northerly part of the track, a switch track, then to walk to the westward between the switch track and the north main track, and then to cross over a covered culvert, then over the main track where the same was planked between the rails, to a path on the south side, by the end of the depot platform, and leading diagonally over open ground to Washington Street, and thence to a school-house. The plaintiff had been accustomed, in summer and in winter, to go from her father's house to school as she was going at the time of her said injury, and over the same places in a reverse direction in going from school to her father's house. At the time of said injury, a little before nine o'clock in the forenoon, the plaintiff and her sister, who was then between twelve and thirteen years of age, were walking hand in hand on said path, and had entered upon the north side of said track, when they were struck by the defendant's freight cars moving on said track.

The path from said track northerly, for about half the distance to North Street, had existed and been used for twenty-five years, and the rest of said path had existed and been used from fifteen to sixteen years. The path had been used and travelled by persons in going to and from a factory and residences on the north side of the track, and by children in going to and from school over and across the track, on ordinary occasions to the number of as many as one hundred persons per day, and in much larger numbers when there were games or circuses on the vacant lot of land on the north side of the track. Of the persons thus using the path, and crossing to and from the same over the track, some of them passed towards the west, walking between the rails of the track and crossing to the south side of the track, and others of them, after leaving the path, or in entering upon it, in going or coming across the track, going in different directions, according to their convenience. The path was from three to five feet in width, well beaten, hard, worn, and smooth, declining about two feet in six as it approached the track. On both sides of the path there was a ridge from two to three feet in height, caused by dirt thrown up in clearing ditches on the side of the track. On one side of the path there was a cobble wall or stones, upon which dirt had been thrown up to the height of two feet; and

there was a clear passage by the path through the ridge to the track. There was no fence or obstruction to passing across and over the track to and from the path. No objection was made by the officers or servants of the defendant to the crossing of the track to and from the path, and no public notices were put up, forbidding the same. Between the rails on the track, from the switch nearest to the path on the east, to the culvert on the west of the path, there was a well-worn and smooth space, trodden down by persons walking to and from the path, over and across the track; and there was an arm of Pegan Brook passing under the covered culvert, and under the defendant's entire road-bed, to a freight-house yard on the north side of the track. Of said culvert, which is opposite a hand-car house on the south side of the track, a portion only is covered, and there was planking between the rails of the track. The defendant's servants, in cleaning out the ditch on the north side of the track, did not put earth on the path at its entrance upon the track; but there was no evidence of any instructions so to do from the defendant's officers, unless such instructions may be inferred from the acts of said servants as the same were from time to time performed. At night, freight cars of the defendant were left standing on the track, sometimes with openings between them opposite the entrance to the path from the track, and sometimes without such openings. The path was not used by the defendant's servants or agents, or kept open for the defendant's convenience; and said culvert was not used by the defendant in its business, excepting by its servants to stand upon or to walk over. The switching of cars at the freight-yard was done near the freight-house; and, for more than a year prior to the plaintiff's injury, one Nickerson, employed by the defendant to direct the switching of cars on the track, while thus acting near the path, on various occasions warned and prevented persons, who were about to walk to and from the path across the track, from so doing, until cars had passed the path, and, after such cars had passed, such persons crossed the track to and from the path, without being prevented or forbidden so to cross by Nickerson, or by any other of the defendant's servants.

On the morning of the plaintiff's injury, Nickerson was not at said place; and on said morning three freight cars had been

cut off at a crossing, by a flying switch, from a freight train of the defendant going west, the rest of which continued on the main track and passed the station before the three cars thus cut off had reached the flying switch. The three cars were switched upon a side track, and were moving thereon westward at the rate of from eight to ten miles per hour, the grade in that direction from said crossing being downward, with two brakemen thereon, one of whom was at the brake, (there being one brake only on each of said three cars,) at the rear end of the foremost of the cars, with his back toward the west, and did not see the plaintiff, or her sister who was with her. The other brakeman was at the hind end of the rear car, and was not able to see what occurred in front of him. The freight train was from fifteen to thirty minutes behind its regular time in arriving at Natick on said morning. While the three cars were moving along towards the entrance from the track upon the path, the plaintiff and her sister came along the path to the track, looked around, but neither saw nor heard the approach of said three cars, or of any cars excepting an express train on the southerly main track, which passed the station while they stood in the path; and, after the passing of said express train, the plaintiff and her sister went from the path upon the track, to cross the same and go to the west, between the rails of the switch track and the north main track, when they were struck by the foremost of said three cars before they reached the space between the rails. There was no evidence that the view of the track from the path to the eastward was obstructed.

The judge ruled that, upon the plaintiff's evidence, the action could not be maintained; and directed a verdict for the defendant.

*B. Wadleigh & C. Q. Tirrell*, for the plaintiff.

*A. L. Soule*, for the defendant.

FIELD, J.   We assume, in favor of the plaintiff, that a private or public right of way across a railroad may be acquired by prescription, since the passage of the Pub. Sts. *c.* 112, § 195, and the acts of the Legislature of which this section is a reënactment. St. 1874, *c.* 372, § 148. Gen. Sts. *c.* 63, § 102. St. 1853, *c.* 414, § 4. See *Gay* v. *Boston & Albany Railroad*, 141 Mass. 407.

We assume, too, that if the plaintiff was invited to cross the track where she crossed it, she cannot be said to have been upon the track without right, within the meaning of the St. of 1874, c. 372, § 148; and that there was evidence for the jury that the plaintiff was in the exercise of due care.

It is doubtful from the report whether the path had ever been used all the way to North Street, or North Avenue, from the railroad track; but if it had been, the northerly portion had been used only for fifteen or sixteen years. There was no evidence of any defined pathway extending from one public road or place to another, which had been used by the public generally for twenty years. The plaintiff was going from her father's house on the north side of the track to a school-house on the south side, as she had been accustomed to do; but there is no evidence of a private right of way over the railroad, appurtenant to the estate occupied by the plaintiff's father; or that the owners and occupants of that estate had used the particular way over which the plaintiff was going, continuously, adversely, and as of right, for twenty years. If any other persons residing on the north side of the railroad had acquired a private right of way over the railroad, that cannot avail the plaintiff. The evidence was insufficient to warrant the jury in finding that there was either a public way or a private way which the plaintiff had a right to use.

The plaintiff contends that the evidence showed that the defendant held out to the public an inducement and invitation to use this path by the peculiar construction and adaptation of the premises, as well as by the acts or declarations of its agents. There was no express invitation by the defendant or its agents. The plaintiff was not using the way for the purpose of transacting any business with the defendant or its agents, or of coming upon the property of the defendant for the purpose of doing anything except to cross its road-bed to go to school. The way across the switch-track was not planked or prepared for use in any manner, except that a clear passage had been left through the ridge formed by throwing up dirt from the ditches on the side of the track. A mere permission or license from the defendant to cross the track is not an invitation. Whether the construction of a crossing over a railroad is such as of itself to

amount to an invitation, or evidence for the jury of an invitation, by the railroad company to the public to use the crossing for the convenience of the public, must be determined by considering whether the construction was such as reasonably to induce the public to believe that the crossing was a public way. *Murphy* v. *Boston & Albany Railroad*, 133 Mass. 121.

The want of a planking over the switch-track, the absence of public ways or public places on each side of the track with which the crossing was immediately connected; the different directions taken by persons using the path, and the irregular course of the path used by the plaintiff after it crossed the switch-track from the north, all tend to show that it was not prepared by the defendant corporation with the intention that it should be used as a public way.

As the plaintiff was on the track without right, and as there was no evidence of wilful or reckless misconduct on the part of the defendant or its agents, the court properly ruled that the action could not be maintained. *Johnson* v. *Boston & Maine Railroad*, 125 Mass. 75. *Wright* v. *Boston & Maine Railroad*, 129 Mass. 440. *Morrissey* v. *Eastern Railroad*, 126 Mass. 377.

*Judgment on the verdict.*