NEW YORK AND NEW ENGLAND RAILROAD COMPANY *vs.*
RAILROAD COMMISSIONERS.

Suffolk. March 6, 1894. — September 5, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Certiorari — Constitutional Law — Law of Ways of Necessity in its Application to Railroads.*

The St. 1892, c. 171, entitled " An Act to require railroad companies to maintain crossings to give access to lands cut off by railroads," is constitutional, and applies where one conveys a part of his land to a railroad in such form as to deprive himself of access to the remainder.

The law that, if one conveys a part of his land in such form as to deprive himself of access to the remainder of it unless he goes across the land sold, he has a way of necessity over the granted portion, applies to the conveyance of land for a railroad by a warranty deed which says nothing about a right of way across the land conveyed and the use to be made of it, although the description shows that a railroad is located there, and a· clause in the deed releasing damages to the grantor's estate " by reason of the location or construction " of the

railroad cannot be construed as a release of the way of necessity to his land beyond; and the fact that the railroad provided and maintained a farm crossing for him for many years indicates that the stipulation was not understood to apply to his right of way.

KNOWLTON, J. These are three petitions for writs of certiorari, brought against the board of railroad commissioners, all involving the same questions. It appears that in 1877 the Rhode Island and Massachusetts Railroad Company laid out and constructed a railroad, which has since been leased to the petitioner for a long term of years. The railroad ran through land of Mancy M. Daniels, John Sullivan, and the predecessors in title of Susan S. Poor and Henry Poor. From each of these owners the corporation took a warranty deed in common form of the land belonging to the grantor included in its location. In each case the situation of the line was such that the railroad cut off the grantor from access to a part of his farm unless he crossed over the railroad, and in each case the corporation constructed a farm crossing over the railroad, which was maintained and used without objection until about the year 1891, when it was closed and the landowner excluded from it by the present petitioner. Soon afterwards the Legislature passed the St. of 1892, c. 171, the first section of which is as follows : " When any person or corporation is cut off from access to lands owned by such person or corporation by the laying out of a railroad or the widening of the roadbed of such railroad, and when no compensation has been paid by the company owning or operating said railroad for cutting off access to said lands, or agreement made relative thereto, the railroad commissioners, after due notice to the parties in interest and a hearing, under such rules as they shall adopt for proceedings under this act, shall, if they deem expedient, order a crossing to be made and maintained at the expense of the railroad company; and shall specify definitely the character of such crossing, and when the same may be used." Under this statute an application was made to the board of railroad commissioners by each of the three parties whose crossing had been closed, and the present petitioner was ordered in each case to construct a crossing and allow it to be used at the place where the crossing had formerly been. The petitioner brings these petitions asking to have the proceedings of the rail-

road commissioners set aside on the ground that the statute is inapplicable to cases like these, and that it is unconstitutional.

If the statute assumed to create a right of way where none before existed, and to put upon railroad corporations the burden of establishing and maintaining crossings for private persons over land held by a railroad corporation under a perfect title subject to no rights or privileges, it might well be held unconstitutional.

These cases present a different question.  By each of the land-owners a warranty deed was given, which says nothing about a right of way across the land conveyed.  But it is familiar law that if one conveys a part of his land in such form as to deprive himself of access to the remainder of it unless he goes across the land sold, he has a way of necessity over the granted portion. This comes by implication from the situation of the parties and from the terms of the grant when applied to the subject matter. The law presumes that one will not sell land to another without an understanding that the grantee shall have a legal right of access to it, if it is in the power of the grantor to give it, and it equally presumes an understanding of the parties that one selling a portion of his land shall have a legal right of access to the remainder over the part sold if he can reach it in no other way. This presumption prevails over the ordinary covenants of a warranty deed.  *Brigham* v. *Smith*, 4 Gray, 297.

In an ordinary case of a sale by warranty deed like those in the cases before us, it is clear that no compensation would be deemed to have been paid for cutting off access to the grantor's remaining land, for there would still be a right of access which could be enforced.  Apart from the use of the location for railroad purposes, we presume it would hardly be contended that the rule would not apply to these cases.  If the railroad had never been operated, or if the use of it for railroad purposes should cease, it is clear that the grantor in each case should have a way of necessity to his remaining land.  The petitioner's cases must, therefore, rest on the contention that a different rule should apply to the conveyance of land for a railroad from that applied to other conveyances.  In the first place, there is nothing expressed in either of the deeds in regard to the use which is to be made of the land, although the description shows that a railroad is located there, and in one of the deeds there is a

release of damages growing out of the location and construction of the railroad.

But in regard to ways of necessity, we fail to find any different principles established in respect to land sold for a railroad from those applicable in other cases. When a sale is made of a narrow strip of land through the centre of a farm, the presumption that the parties do not intend to leave the grantor with no means of reaching or using the land beyond the strip sold is certainly as strong as when land is sold in other shapes which would require a way of necessity of much greater length. In these cases the parties recognized the reasonable rule by maintaining farm crossings for many years. Our statutes apply the same rule of policy in this respect to ways across railroads as across other lands. When land is taken for a railroad and the parties fail to agree about damages, it is the duty of the county commissioners, on application, not only to estimate the damages, but to order the construction and maintenance of such structures for the security and benefit of the owner as they judge reasonable. Pub. Sts. c. 112, § 113. *White* v. *Boston & Providence Railroad,* 6 Cush. 420. *Keith* v. *Cheshire Railroad,* 1 Gray, 614. *Boston Gas Light Co.* v. *Old Colony & Newport Railway,* 14 Allen, 444, 445. See also Pub. Sts. c. 112, § 138. Under this statute the county commissioners often order a farm crossing where access to the land beyond may be had by going around through public ways, as well as where the situation would give a way of necessity. When land is taken, the title to it for ordinary railroad purposes is as good as when it is conveyed by a warranty deed, but the statutes have always recognized the necessity and propriety of securing rights of way for landowners over the railroad. Our decisions hold that, when land over which there is no public way is *taken* for a railroad, there is no right of crossing it except as prescribed by the county commissioners, but the statute assumes that the county commissioners when requested will establish crossings where they are reasonably necessary. We find nothing in the law in regard to the use of railroads which controls the ordinary presumption that, when one has sold a narrow strip of land through his farm, the parties expect him to have a passageway across the strip to reach his land beyond, if he has no other means of access to it.

Until the passage of St. 1892, c. 171, there was no statute applicable to cases like these. It is quite proper that the rights of the parties in such cases should be defined. It was within the power of the Legislature to regulate the mode of exercising these rights for the safety and convenience of all concerned. The landowner has the right of way by operation of law. The burden of constructing and maintaining the way is put by the Legislature on the railroad corporation, not for the benefit of the landowner, but for the protection of the public. The exercise of such a right is attended with possible risk to passengers and to those using the way, and the Legislature may well put upon the railroad company the obligation of keeping its railroad safe for use. *Norwood* v. *New York & New England Railroad,* 161 Mass. 259. Railroad companies cannot justly complain at being compelled to allow persons a convenient opportunity of using and enjoying their property where there has been no agreement, and no consideration for an agreement, to give up the use of it.

The clause in Sullivan's deed releasing damages to his estate " by reason of the location or construction " of the railroad we do not construe as a release of the way of necessity to his land beyond. Very likely there were damages from the construction of the road which had no connection with access to his land. The fact that the corporation provided and maintained a farm crossing for him for many years indicates that this stipulation was not understood to apply to his right of way. If there are facts which favor a different construction, the petitioner might have shown them. There is nothing in either of the cases to show that the way of necessity which was created by the conveyance has ever been extinguished by subsequent proceedings, and the rights of the parties must therefore be determined upon the deeds.

A majority of the court are of opinion that the statute was intended to apply to cases like these, and that no compensation was paid by the company for cutting off access to the lands, and no agreement was made relative thereto.

*Petitions dismissed.*

*F. A. Farnham,* for the petitioner.
No counsel appeared for the respondents.