MARGARET J. SYPHER *vs.* DIRECTOR GENERAL OF RAILROADS.

Norfolk.   November 13, 1922. — January 10, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Easement*, Right of way. *Way*, Private. *Negligence*, Grade crossing, Railroad.

At the trial of an action against the Director General of Railroads for damages to a team of horses and a wagon owned by the plaintiff, resulting from a collision at a grade crossing of a private way with a freight train operated by the defendant and alleged to have been caused by failure of the defendant properly to maintain the crossing and negligence in the operation of the train, there was evidence that the way was a private way leading from a public highway southerly through land of the owner of the way across a railroad operated by the defendant to meadow land of the owner of the way; that it was used for hauling hay over the railroad and for nothing else; "that the railroad permitted him [the owner of the way] to cross over the railroad for the purpose of harvesting hay . . . ; that the other people who went over the crossing were people who were harvesting hay on the meadow land below his farm" and that "the railroad always kept the crossing in good repair;" that the owner of the way gave permission to use it to one who engaged the plaintiff to remove some ties which were upon the railroad right of way about two hundred yards east of the crossing, but that the owner of the way did not know whether it was necessary to cross the railroad or not for that purpose; that in the morning of a July 4 the plaintiff's agent drove the team with a wagon load of the ties upon the crossing from a southerly direction, the wagon wheels became lodged between the rails of the track and the wagon was struck by a passing freight.

train, which the engineer stopped as soon as he could after he knew of the predicament of the plaintiff's agent. A verdict for the defendant was ordered. *Held*, that

(1) There being no evidence that the crossing was a public crossing, the defendant was not bound to maintain it as such;

(2) The right of the owner of the private way to use the crossing could not be extended to include those to whom he gave permission to use it;

(3) At most the plaintiff was a mere licensee and took the premises as he found them and was there at his own risk;

(4) There was nothing in the evidence to show that the defendant was guilty of any intentional, wanton or reckless conduct;

(5) The ordering of the verdict for the defendant was right.

TORT for damage to a team of horses and a wagon of the plaintiff resulting from a collision, on a grade crossing of a private way and the New York, New Haven and Hartford Railroad near Randolph with a freight train operated by the defendant. Writ dated January, 1920.

The declaration as amended was in three counts, the first and second counts charging negligence in failure to keep the crossing in proper repair, the second count also charging negligence in the operation of the train and the third count charging gross neglect in maintenance of the crossing and "gross, wanton and wilful negligence" in the operation of the train.

In the Superior Court the action was tried before *King*, J. Material evidence is described in the opinion. At the close of the evidence, upon motion of the defendant, the judge ruled that the plaintiff was not entitled to recover, ordered a verdict for the defendant and by agreement of the parties reported the action for determination by this court upon the stipulation that if the ruling and ordering of the verdict were right, judgment was to be entered for the defendant upon the verdict; but if wrong, judgment was to be entered for the plaintiff in the sum of $500.

*R. Lakin*, for the plaintiff, submitted the case without argument or brief.

*M. G. Gonterman*, for the defendant, submitted a brief.

CARROLL, J. This action of tort arose out of a collision at a private railroad crossing near Randolph, resulting in damage to the plaintiff's property. One Willard was the owner of the land on both sides of the crossing. The northern boundary of Willard's estate was a public highway known as North Street, from which the way in question ran through his property, over the crossing

to his land on the other side. He testified that he had used the way over the railroad "to get to his farm on the south side of the track; . . . known as 'the meadows'; that it was used for hauling hay over the railroad and for nothing else;" that "the railroad permitted him to cross over the railroad for the purpose of harvesting hay . . . ; that the other people who went over the crossing were people who were harvesting hay on the meadow land below his farm;" and that "the railroad always kept the crossing in good repair."

William G. Toomey testified "there were some old railroad ties near Willard's Crossing which he wanted to have hauled to his home; . . . that he hired the plaintiff to haul the ties; . . . which were on the . . . railroad right of way." Toomey further testified that he was given permission by Willard to use the way through his land in order to remove the ties. On this point Willard testified that in his conversation with Toomey "he did not remember that Toomey asked anything about going over the railroad; that he understood that he wanted permission to use the land between North Street and the railroad; . . . that he did not know whether it was necessary for him to cross the railroad or not." On cross-examination Toomey testified that the ties were "upon the railroad right of way about two hundred yards east of the crossing."

After the ties were loaded on to the plaintiff's wagon the driver attempted to pass over the crossing in a northerly direction. When upon the southerly track "the wheels went down and were caught in the tracks." There was evidence that at this time no train was in sight, that after the "team had been stuck on the crossing three or four minutes . . . he observed the train . . . going in an easterly direction." The driver of the team went about a hundred feet from the crossing toward the approaching train, "waving his handkerchief." There was evidence that the locomotive went about one hundred and twenty feet east beyond the crossing before "it came to a stop;" that, standing on the track twelve hundred feet west of the crossing, one could see the crossing. The engineer testified that as the engine came around the curve he saw "somebody waiving, and then applied the emergency brakes;" that "the train was going down grade at about thirty miles an hour; . . . that . . . after the brakes were applied" there was nothing further he could do; that at the time of

the collision the train was going three miles an hour; that in his opinion "it was as good a stop as could be made under the circumstances;" that "he could not tell of anything else that he could have done to have stopped sooner."

The way across the railroad did not connect with any highway on the south. It was a private way for the use of Willard, and according to his testimony he was permitted to cross the railroad for the purpose of harvesting hay. There was no evidence that the crossing was a public one, and the defendant was not bound to maintain it as such. *Wright* v. *Boston & Albany Railroad,* 142 Mass. 296. *Bowler* v. *Pacific Mills,* 200 Mass. 364. *Berube* v. *New York, New Haven & Hartford Railroad,* 234 Mass. 415.

Even if we assume it could be found that Toomey was permitted by Willard to cross the track to the south side of the railroad, and not merely use the land between North Street and the railroad, Willard's right to use the crossing was limited to the beneficial use of his own land and he could not impose upon the defendant the additional duty of keeping the way open for others. His right to use the crossing could not be extended to include those to whom he gave permission to use it. *Wright* v. *Boston & Albany Railroad, supra.* *Berube* v. *New York, New Haven & Hartford Railroad, supra.* Willard had no authority to permit Toomey to enter upon the defendant's "right of way" or location or to use the crossing for this purpose. At most the plaintiff was a mere licensee. She took the premises as she found them and was there at her own risk. The defendant was liable only for intentional or wanton injury, and there is nothing in the evidence to show that the defendant was guilty of any intentional, wanton or reckless conduct. When the engineer first saw the team, as the engine came around the curve, he did not know the wagon wheels were caught in the track; and as soon as he appreciated there was danger, he applied the emergency brakes. There was no evidence to show that he failed to do everything in his power to avoid the collision. *Wright* v. *Boston & Albany Railroad, supra.* *June* v. *Boston & Albany Railroad,* 153 Mass. 79. *Chenery* v. *Fitchburg Railroad,* 160 Mass. 211. *O'Brien* v. *Union Freight Railroad,* 209 Mass. 449. *Berube* v. *New York, New Haven & Hartford Railroad, supra.* *Murphy* v. *Avery Chemical Co.* 240 Mass. 150.

The ruling that the plaintiff could not recover was right. Judgment is to be entered on the verdict.

*So ordered.*