DELIA COOLEY, administratrix, *vs.* BOSTON AND MAINE RAILROAD.

GARDEN CITY GRAVEL CORPORATION *vs.* SAME.

Middlesex.     January 4, 1939. — June 28, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & COX, JJ.

*Way*, Private: extent of easement, by necessity. *Railroad*, Grade crossing. *Estoppel*. *License*. *Negligence*, Licensee, Grade crossing. *Practice, Civil*, Auditor: findings. *Words*, "Farm crossing."

Statements of testimony, set out in an auditor's report agreed to constitute a case stated, could not be accepted as facts unless the report indicated that the auditor adopted them as true.

An agreement by a railroad corporation, the grantee in a deed poll from the owner of land bisected by the railroad, that it would make and maintain "a suitable farm crossing," followed by the construction of a crossing and an oral assent by officers of the corporation to the use of the way by a subsequent owner of adjoining land also bisected by the location, would not warrant a finding that the adjoining owner had a right to use the way in connection with a sand and gravel business conducted on his land.

The owner of land divided by a railroad located by eminent domain gained no right of way of necessity over the location from one part of his land to the other where no right of crossing was reserved in the location or ordered by proper public officials.

A statement by officers of a railroad corporation to a prospective purchaser of land bisected by its location and having no crossing over it, that they "would have no objection" to his using a crossing on adjoining land, and his purchase in reliance on the statement did not estop the corporation to deny his right to use that crossing; the statement created no more than a mere license to such use.

A railroad corporation was not liable for injury resulting from negligent operation of a train at a private grade crossing and sustained by one who was at most a mere licensee with respect to the corporation.

Two ACTIONS OF TORT. Writs in the Second District Court of Eastern Middlesex dated July 8 and September 13, 1935.

On removal to the Superior Court, the actions were tried before *M. Morton*, J.

*J. C. Reilly*, (*C. S. Maddock* with him,) for the defendant.

*W. J. Bannan*, (*R. W. McEnaney* with him,) for the plaintiffs.

QUA, J. The first action is by the administratrix of one Cooley to recover for his death while driving an automobile truck loaded with gravel over a private crossing of the defendant's railroad in Weston. The plaintiffs allege that a collision between the truck and a train was caused by the negligence of the defendant. The second action is for property damage to the truck.

The cases come to us by report of the judge wherein it is stipulated that an auditor's report previously filed in both actions "constitutes a case stated," and that if the judge erred in entering judgment for the plaintiff in each case on that report, judgments are to be entered for the defendant.

We cannot accept as facts various statements of the testimony of witnesses included in the auditor's report, except as that report may indicate that the auditor adopted such statements as true. In some instances it is not easy to draw the line between statements of evidence and findings of fact. Yet we must make that distinction as best we can by construction of the report itself.

At the outset the question arises whether Cooley was using the private crossing under any right which the defendant was bound to respect or by invitation of the defendant on the one hand, or as a bare licensee or trespasser on the other hand. Only under the first alternative would the defendant owe Cooley or his employer, the corporate plaintiff, the duty of due care, and the plaintiffs must establish as a part of their cases that the defendant did owe them that duty.

The findings pertinent to this issue appear to be these: The railroad, a single track line running east and west, was originally constructed about 1880 by the Massachusetts

Central Railroad Company, the defendant's predecessor in title. It was laid out by right of eminent domain across the "Ellis land" and the "Coburn land." These are two adjoining parcels. The railroad location bisected both parcels, leaving a part of each on the north side of the railroad and a part on the south side. The crossing is on the Coburn land. There is no crossing on the Ellis land, and there is no access from that part of the Ellis land which lies south of the railroad to that part which lies north of the railroad or to any street or way, except by using the crossing upon the Coburn land. In addition to the taking of the strip of the Coburn land the Massachusetts Central Railroad Company obtained from the Coburns in 1880 a deed of the location across their premises in fee for railroad purposes, the grantee agreeing in the deed that it would make and maintain "a suitable farm crossing at some place over said strip of land to be agreed upon by the parties hereto . . . ." Thereafter the crossing was "established." There was no corresponding deed of the location on the Ellis land. In 1929 the Ellis heirs conveyed their tract to one Eldred, who in 1930 conveyed it to Garden City Sand and Gravel Company Inc., which, so far as appears, was the owner of the Ellis land at the time of the accident. This is not the corporation which is here a plaintiff. The plaintiff corporation was not organized until 1934. The Coburn land was conveyed in 1934 to O'Connell and Craven, and in 1935, O'Connell conveyed his half interest to one Regan. At the time of the accident neither tract of land was used for farming. Both tracts were used by the plaintiff corporation in the business of digging, processing and selling sand and gravel. What right the plaintiff corporation had to do business on these lands does not appear, although it does appear that Regan, a part owner of the Coburn land, was treasurer and general manager of the plaintiff corporation, and that Eldred, who owned the Ellis land for about a year in 1929–1930, was clerk of the plaintiff corporation and also president of the Garden City Sand and Gravel Company Inc., the present owner of the Ellis land. On the day of the accident the

plaintiff corporation, for which Cooley was driving, was hauling gravel from a pit on the southerly portion of the Ellis land to a hopper on the northerly portion of that land and was using the Coburn land and the Coburn crossing under the "permission" of Regan.   Before Eldred purchased the Ellis land in 1929 his attorney had a talk at the offices of the defendant with two persons, who can be inferred to have been officials and representatives of the defendant, about crossing the railroad.   These representatives said in substance that the defendant would prefer not to have two crossings, but that if "the owners of the Ellis land" could get permission to cross by way of the Coburn land there would be only one crossing, "and the railroad would have no objection to its use by the owners of the Ellis land."   After this Eldred discussed with the Coburn who then owned the Coburn land "the question of getting a crossing installed by the railroad over the Coburn land," and within forty-eight hours after Coburn had written the defendant "the planking in the present crossing was put in" by the defendant.   The defendant knew of the intention to operate a sand pit upon the Ellis land, which Eldred was to buy.   Shortly after the installation of the planking Eldred completed the purchase.   From the time the planking was placed, or replaced, just before Eldred's purchase until the date of the accident the crossing on the Coburn land was used, as the defendant knew, for hauling gravel.

These facts fail to show a right of way over the Coburn crossing for the benefit of the Ellis land, in connection with which the crossing was being used at the time of the accident.   "An easement in real estate can be acquired only by deed, or by prescription, which supposes a deed."   *Morse* v. *Copeland*, 2 Gray, 302, 305.   *Cook* v. *Stearns*, 11 Mass. 533.   *Baseball Publishing Co.* v. *Bruton*, 302 Mass. 54. No way by prescription is claimed and apparently none could have been acquired against the railroad corporation.   G. L. (Ter. Ed.) c. 160, § 114.   At most the only grant by deed was that of a "farm crossing" for the use of the Coburn land.   Whatever may be the variety and extent of user permitted by the words "farm crossing," an

easement for such a crossing appurtenant to the Coburn land cannot be extended to include the necessities of a general gravel mining and processing business on the Ellis land. *Atwater* v. *Bodfish*, 11 Gray, 150. *Baldwin* v. *Boston & Maine Railroad*, 181 Mass. 166. *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad*, 215 Mass. 381, 388. *Berube* v. *New York, New Haven & Hartford Railroad*, 234 Mass. 415. *Pease* v. *Parsons*, 259 Mass. 86, 90. *Clarkin* v. *Duggan*, 292 Mass. 263. *Davenport* v. *Lamson*, 21 Pick. 72. *Greene* v. *Canny*, 137 Mass. 64, 68. *Sypher* v. *Director General of Railroads*, 243 Mass. 568, 571. Furthermore, it is difficult to see how the words here used in a deed poll can be given any greater effect in this action at law than that of a contract between the original parties to the deed. *Childs* v. *Boston & Maine Railroad*, 213 Mass. 91, 93. Neither plaintiff was such a party.

The plaintiffs contend that the owners of the Ellis land had a right of way by necessity over the railroad to connect their severed portions, and that the negotiations hereinbefore set forth resulted in the specific location or establishment of that way on the ground as running via the Coburn land and over the Coburn crossing. See *Byrne* v. *Savoie*, 225 Mass. 338, 340. One fatal difficulty with this is that the facts reported fail to show that the Ellis owners had any right of way by necessity. In *Googins* v. *Boston & Albany Railroad*, 155 Mass. 505, at page 506, this court said, with citation of previous cases, "In general, when land is taken for a railroad, and no right of crossing is reserved in the location or ordered by the county commissioners, it is not subject to such a right, even if without it an owner will be cut off from access to his land." The damages awarded to the landowner include this element of loss. *New York, New Haven & Hartford Railroad* v. *Miller*, 165 Mass. 514, 516. Compare *Hamlin* v. *New York, New Haven & Hartford Railroad*, 166 Mass. 462. See, however, as to land *deeded* to a railroad, *New York & New England Railroad* v. *Railroad Commissioners*, 162 Mass. 81. The provisions of G. L. (Ter. Ed.) c. 160, §§ 109, 110, whereby one whose land has been cut off by a railroad may secure

a right to cross upon application to the county commissioners or to the department of public utilities, by their terms apply respectively only in instances where the owner has a right to cross and in instances where he has received no compensation. In this case neither condition is shown to have been satisfied.

We cannot accept the plaintiffs' contention that the defendant is estopped to deny the "right" of the plaintiffs to use the Coburn crossing because of its statement to Eldred that it would have no objection to the use of that crossing and Eldred's purchase of the Ellis land in reliance upon that statement (if he did rely upon it). One who sees fit to rely on a mere promise or permission of this kind cannot obtain the equivalent of a grant by invoking the doctrine of estoppel. Eldred knew that the railroad corporation had made to him no grant of an easement in its land. *Fitch* v. *Seymour,* 9 Met. 462, 468. *Stevens* v. *Stevens,* 11 Met. 251. *Langdon* v. *Doud,* 10 Allen, 433. *Jackson* v. *Allen,* 120 Mass. 64, 77. *Hodgkins* v. *Farrington,* 150 Mass. 19. *Claflin* v. *Boston & Albany Railroad,* 157 Mass. 489, 495. *Home Investment Co.* v. *Iovieno,* 243 Mass. 121, 125. *Carlton Chambers Co.* v. *Trask,* 261 Mass. 264, 269. *Nelson* v. *American Telephone & Telegraph Co.* 270 Mass. 471. There is nothing to the contrary in *Levin* v. *Rose,* 302 Mass. 378.

If the owners of the Ellis land had had a right to a way over the track it could be argued with some plausibility that the defendant invited Eldred to use the Coburn crossing in the defendant's own interest and for its own benefit in order to save itself the inconvenience of two crossings so near together, although a question might still remain as to whether such invitation included the plaintiffs. But when, so far as appears, the Ellis owners neither had nor then claimed any right to any crossing at all, this argument falls, and the defendant's statement that it "would have no objection" to the use of the Coburn crossing cannot in any event fairly be construed as creating more than a mere license under which the plaintiffs used the crossing. *Mason* v. *Albert,* 243 Mass. 433, 437.

As the plaintiffs were mere licensees, and as the defendant was guilty of no reckless or wanton conduct, it results that the plaintiffs cannot recover. *Sypher* v. *Director General of Railroads*, 243 Mass. 568, 571. Under the terms of the report the entry in each case will be

*Judgment for the defendant.*