JAMES T. O'BRIEN *vs.* BOSTON AND MAINE RAILROAD
(and a companion case[1]).

Hampden.    November 29, 1949. — March 8, 1950.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Railroad,* Grade crossing. *Landlord and Tenant,* Construction of lease, Landlord's liability to tenant or his family or his invitee, Lease for camp, Waiver. *Negligence,* Invited person, Grade crossing. *Practice, Civil,* Question of law or fact. *Waiver. Words,* "Camp."

One, using a private grade crossing over a railroad solely in the right of the lessee under a lease given by the railroad of certain premises, including access thereto over the crossing, was not an invitee, but at most a licensee, when he was struck by a train on the crossing while he was leaving the leased premises after going there to patronize an establishment conducted by the lessee but of a kind not permitted by the terms of the lease to be conducted there.

A lease of premises "only for . . . a camp" did not entitle the lessee to use the premises for an establishment where meals and liquor were sold and music and the facilities for dancing were provided to members of the public.

The interpretation of unambiguous words of a lease was a question of law for the judge and should not have been submitted to the jury.

A provision of a lease restricting the lessee to one specified use of the leased premises was for the benefit of the lessor and might properly be found to have been waived if the lessor for several years accepted rent with knowledge of and without objection to a different use being made of the premises by the lessee.

TWO ACTIONS OF TORT. Writs in the District Court of Holyoke dated October 4, 1939.

Upon removal to the Superior Court, the actions were tried before *Warner,* J.

[1] The companion case is by Liberty Liquors Inc., against the same defendant.

O'Brien *v.* Boston & Maine Railroad.

In this court the cases were submitted on briefs.

*D. B. Wallace & F. S. Pillsbury,* for the defendant.

*R. P. Walsh & G. J. Callahan,* for the plaintiffs.

RONAN, J. These are two actions of tort to recover for personal injuries and property damage arising out of a collision between the defendant's train and an automobile truck operated by O'Brien and owned by Liberty Liquors Inc., as the truck was being driven over a private crossing in Holyoke shortly after one o'clock 'on the morning of June 16, 1939. The jury returned verdicts in favor of the plaintiffs. The defendant excepted to the denial of its motions for directed verdicts and for the entry of verdicts under leave reserved, and to the refusal to grant certain requests for instructions.

At the place of the accident, the defendant's right of way ran north and south and was about twenty-five feet easterly of and parallel to the State highway running between Holyoke and Northampton. The right of way was occupied by two tracks. Northbound trains used the easterly track and southbound the westerly track. The defendant owned a tract of land lying between the easterly side of its right of way and the Connecticut River. About ten camps were located upon this land, two of which had been leased to one O'Hare since 1933. His lease contained a provision which stated that "The lessee agrees to use said premises only for the location of a camp . . . and not to place or allow to be placed on any part of the demised premises . . . any advertisements, signs or posters . . . without written consent of the lessor . . . ." O'Hare had been licensed to sell intoxicating liquor, and in 1934, without any conversation with anyone representing the defendant, he erected a large sign, facing the State highway and reading as follows: "O'Hare's" in the center portion, on the right side "Beer Liquors" and on the left side "Dine Dance." Two posts situated near or within the westerly boundary of the defendant's right of way supported a cross piece which extended across the entire width of the road leading to the crossing. The sign was attached to this cross piece over

the center of the road at a height sufficient to permit automobiles to pass under it as they approached the crossing from the State highway. O'Hare had also attached to the wire fence on the easterly side of the crossing a "slow glow" sign which, when within the focus of the lights of an approaching automobile, became illuminated and advertised a brand of ale. O'Hare conducted clambakes and outings on the premises during the summer months.

There was testimony that O'Brien drove to O'Hare's place of business at about midnight, purchased and drank one or two drinks of liquor, got into the truck and, after a short nap, started the truck, and that as he was travelling westerly over the crossing on his way to the State highway he was struck by a train going north on the easterly track.

It was agreed at the trial that the place of the accident was a private crossing. It is not now contended that there was any evidence of wilful, wanton or reckless conduct on the part of the defendant. It therefore follows that, unless O'Brien in using the crossing had the rights of an invitee so that the defendant owed a duty of exercising reasonable care not to harm him as he travelled over the crossing, there can be no recovery in either case. O'Brien had no right to be on the crossing, except such as he derived through O'Hare. The duty which the defendant owed to O'Hare measures the obligation it owed to O'Brien. *Karlowski* v. *Kissock*, 275 Mass. 180. *McCarthy* v. *Isenberg Bros. Inc.* 321 Mass. 170. O'Hare had the right to use the crossing which was the only means of reaching the State highway from the premises which the defendant had demised to him, but O'Hare was restricted by the terms of his lease to using the property only for a camp. The primary meaning of a camp is a field or a place upon which tents or buildings are located for the occupancy of soldiers. It sometimes means huts, tents or other structures designed and used for temporary shelter. It is frequently used to denote a structure lacking the interior finish and equipment ordinarily possessed by permanent dwellings, and adapted for seasonal occupation. The term carries with it the concept of tem-

porary shelter for a more or less short period of time. See *Commonwealth* v. *Bearse*, 132 Mass. 542; *Nye* v. *Whittemore*, 193 Mass. 208; *Jones* v. *State*, 64 Ga. App. 376; *Portage Township* v. *Full Salvation Union*, 318 Mich. 693; *Hansen* v. *Remer*, 160 Minn. 453; *Johnson* v. *Jones*, 86 Vt. 167. A place maintained for the sale of food to be eaten on the premises, the dispensing of intoxicating liquor, and the furnishing of music and facilities for dancing to such members of the public as desire food, liquid refreshments and dancing, is not a camp, and cannot be said to be used for camping purposes. The jury should have been so instructed. Instead the jury were told "that, when Mr. O'Hare and the railroad sat down to make out a new lease or re-lease, — that, when they wrote down the word 'camp' — a man, standing in Mr. O'Hare's place, and anybody, representing the railroad standing in their place, under all of those circumstances, — having regard to the locality, having regard to their prior relations together, concerning which there has been some evidence, — that, if two such persons, sitting down, would use the word 'camp' to describe that place, then you will be warranted in saying that the word 'camp' was a word designated, in the minds of both, to describe the premises as was being conducted by Mr. O'Hare on this night." They were further told that O'Brien must establish that the word "camp" in the lease was used as descriptive of the place conducted by O'Hare, otherwise their verdicts must be for the defendant. Whether O'Brien in using the crossing was an invitee or at most a licensee was one of the principal issues at the trial.

The interpretation of the lease was a question of law, *Walker Ice Co.* v. *American Steel & Wire Co.* 185 Mass. 463; *Codman* v. *American Piano Co.* 229 Mass. 285, 292, and should not have been left to the jury, who must have found, in accordance with their understanding of the lease, that O'Brien was using the crossing for a camping purpose and within the terms of the lease and so was there lawfully and as a matter of right as against the defendant by virtue of an invitation from O'Hare which the latter as the lessee

of the defendant was authorized to extend to him. They could not have returned a verdict for him on any other ground. There was error in submitting to the jury the meaning of the lease, and in denying the defendant's requests in both cases that "The lease between the defendant and O'Hare being for use 'only for the location of a camp' must be interpreted as matter of law as not including the use of the premises for the sale of all alcoholic beverages to the public." *Thomas v. Commercial Union Assurance Co. Ltd.* 162 Mass. 29. *Violette v. Rice,* 173 Mass. 82. *Daly v. Kingston,* 177 Mass. 312. *Loomer v. Harlow,* 214 Mass. 415. *Meegan v. Hall,* 241 Mass. 449. *Western Newspaper Union v. Dittemore,* 264 Mass. 74. *Mechaber v. Pittle,* 270 Mass. 193. *Brand v. Suburban Land Co. Inc.* 299 Mass. 336.

As the exceptions in both cases must be sustained, we will discuss briefly the questions that might arise at the new trial with reference to the status the plaintiffs might acquire through O'Hare in using the crossing at the time of the accident. While the lease stood unmodified and unaltered, O'Hare could not use the demised premises together with the crossing for a use different from that designated in the lease, or for one not contemplated or intended by the parties at the time of its execution and delivery, *Gannett v. Albree,* 103 Mass. 372, *Gaston v. Gordon,* 208 Mass. 265, *Imbeschied v. Lerner,* 241 Mass. 199, *Sheff v. Candy Box Inc.* 274 Mass. 402; and he could not as against the defendant authorize others to make such different use while his rights as lessee remained fixed by the original terms of the lease. *Berube v. New York, New Haven & Hartford Railroad,* 234 Mass. 415, 419. *Sypher v. Director General of Railroads,* 243 Mass. 568, 571. *Crullen v. Edison Electric Illuminating Co. of Boston,* 254 Mass. 93. *Cooley v. Boston & Maine Railroad,* 303 Mass. 371, 374–375. Mere use of the premises by O'Hare for a purpose beyond the scope of the lease would not bind the lessor in the absence of knowledge and consent by the lessor, *Mistler v. O'Grady,* 132 Mass. 139; *Lufkin v. Zane,* 157 Mass. 117, 123; *Conroy v. Allston Storage Warehouse Inc.* 292 Mass. 133; *Little v.*

*Lynn & Marblehead Real Estate Co.* 301 Mass. 156, 160, or by those who were authorized by the lessor to deal with such matters in its behalf. *Stetson Press, Inc.* v. *Bunsen Oil Burner Corp.* 285 Mass. 291, 293–294. *Wurm* v. *Allen Cadillac Co.* 301 Mass. 413, 415–416. *Exchange Realty Co.* v. *Bines,* 302 Mass. 93, 97. *Silversmith* v. *Sydeman,* 305 Mass. 65, 71. The provision restricting the use of the leased premises, including the right to travel over the crossing, was for the benefit of the lessor which could waive it if it saw fit to do so. *Leathe* v. *Bullard,* 8 Gray, 545. *Fitzsimmons* v. *Hale,* 220 Mass. 461. *Mikkanen* v. *Safety Fund National Bank,* 222 Mass. 150, 154. *Follins* v. *Dill,* 229 Mass. 321, 324. *Stewart* v. *Shannon & Luchs Co.* 46 Atl. (2d) 863. *10th & 5th, Inc.* v. *Arrowsmith,* 186 Misc. (N. Y.) 864. See *LeBlanc* v. *Atlantic Building & Supply Co. Inc.* 323 Mass. 702. The acquiescence of the defendant was not the equivalent of an invitation, *Cohen* v. *Davies,* 305 Mass. 152, 154–155, but the question here is not whether there was any invitation extended by the defendant to O'Brien to use the crossing, there being no evidence of any such invitation, but the question is whether the defendant consented to a change in the use of the demised premises including the crossing — a use in which it had an interest and for which it was receiving compensation from O'Hare, *Wilcox* v. *Zane,* 167 Mass. 302, 306 — and thereby authorized O'Hare to extend an invitation in connection with the changed use to a certain class of persons which included O'Brien. *Fitzsimmons* v. *Hale,* 220 Mass. 461, 464. *Mikkanen* v. *Safety Fund National Bank,* 222 Mass. 150, 154.

The jury could infer from the presence of the large sign, which was illuminated at night and was erected by the westerly edge of the defendant's location for a period of nearly five years prior to the accident, that it knew that O'Hare was using the demised premises for the purposes disclosed by the sign, that he was soliciting the public to patronize his place of business and that in order to reach it they would have to pass over the crossing; that it for years had collected and accepted the annual rental from

O'Hare with such knowledge and, so far as appears, without objection to such continued use of the premises; and that it acquiesced in and consented to the use of the crossing by customers of O'Hare. The jury could find that the defendant waived the provision of its lease restricting the use of the premises by O'Hare, that O'Hare and those claiming under him, as were the plaintiffs, had a right to use the crossing in connection with the business O'Hare was conducting on the premises, and that the defendant was bound to exercise due care toward them as business invitees of O'Hare.

We need not discuss the other questions dealing with the issue of liability as the evidence may be different at the new trial.

*Exceptions sustained.*