Toomey, J.
INTRODUCTION
This is an eminent domain action arising from the taking by the Metropolitan District Commission (“MDC”) on June 24, 1992 of the subject parcel (the “parcel”) in Holden, Massachusetts. The petitioner, Ronald Paquette (“Paquette”), brought suit against the Commonwealth claiming that he was not given fair compensation for the parcel. On December 3, 2001 this Court held an evidentiary hearing on the issue of legal access to the parcel on the date of the taking.[1]
Paquette claims that he has an easement to his land providing him access to the nearest public way, Princeton Street. The Commonwealth claims that the easement was extinguished. The sole issue at bar is whether or not Paquette has access from his land to the public way. The resolution of that issue will be material to the determination of the value of the property taken by the MDC.
The matter was heard before the Worcester Superior Court on December 3, 2001. After the close of the evidence the Court afforded counsel an opportunity to submit written closing arguments. The arguments were filed in this Court on January 3, 2002. Based upon the evidence received at the hearing and having taken into account the arguments of counsel, the Court has made the following findings of fact.
FINDINGS OF FACT[2]
1. On May 16, 1822, David Wench conveyed to Jarvis Abbott land in Holden, Massachusetts containing 286 acres, one-hundred thirty-five rods. Said deed is recorded in the Worcester County Registry of Deeds at Book 229, Page 271 and 272.
2. The 286-acre tract had frontage on Princeton Street. Subsequently, certain parcels of Abbott’s land were transferred to others.
3. On May 18, 1822, Jarvis Abbott conveyed to Jonas Chaffing and Samuel Foster 95 acres. The deed is recorded in the Worcester County Registry of Deeds of Book 236, Page 186.
4. On September 28, 1822, Jarvis Abbott conveyed to Ethan Davis a tract of land containing 200 acres. This deed is recorded in the Worcester County Registry of Deeds at Book 229, Page 608.
5. On October 3, 1823, Ethan Davis conveyed to Joel B. Fuller and Austin F. Fuller a tract of land containing 100 acres. This tract of land is recorded in the Worcester County Registry of Deeds at Book 258, Page 618.
6. On November 28, 1831, Augustus Fuller conveyed to John Lovell a tract of land containing 38 acres. This deed is recorded in Book 286, Page 566 in the Worcester County Registry of Deeds.[3]
7. The Lovell 38-acre parcel is the same parcel that was later conveyed to Paquette, was taken by eminent domain by the MDC in 1992 and is sought to be valued via the instant lawsuit.
8. On December 27,1871, the Central Massachusetts Railroad filed a plan with the Worcester County Commissioners showing a layout of a proposed railroad line. That railroad line rims in a north/south direction in such a manner as to cross the easement by necessity enjoyed by Paquette and his predecessors in the 38-acre parcel.
9. On July 21; 1881, Charles Flagg granted to the Massachusetts Central Railroad Company a deed for his land, the same land shown on the layout of the proposed railroad line as filed with the Worcester County Commissioners on December 27, 1871. The Flagg to Railroad deed referred to Flagg’s land only, made no mention of the Paquette parcel, and did not allude to any easement by necessity or any other easement. The land thus conveyed was sited wholly in Flagg’s property and impacted the 38-acre parcel only insofar as it crossed the latter’s easement by necessity.
10. In 1926, the Metropolitan District Water Supply Commission recorded land takings for the purpose of *3 constructing the Wachusett-Coldbrook tunnel. The takings are recorded at the Worcester County Registry of Deeds in Book 2446, Page 1.
11. In 1952 the City of Worcester took, by eminent domain for water supply purposes, property to the east of Princeton Street and to the south of the 38-acre parcel.
12. The 38-acre parcel was conveyed to Paquette in 1982.
13. On June 24, 1992, the MDC acquired the Paquette parcel by eminent domain.
DISCUSSION
The issue at bar is whether Paquette had access to his parcel from Princeton Street when the land was acquired by the MDC in June of 1992.[4] Both parties agree that, prior to 1871, the Paquette parcel enjoyed an easement by necessity providing access to and from Princeton Street. The Commonwealth claims; however, that, when the Central Massachusetts Railroad filed a railroad plan with the County Commissioners on December 27, 1871, the easement by necessity was thereby extinguished. Paquette, in response, argues that the filing of the railroad plan in 1871 did not extirpate the easement by necessity, and thus it survives today.
The Effect of the Railroad Layout Plan in 1871
The pertinent statute in effect in 1871, to wit St. 1860, ch. 63, §19 (currently G.L.c. 160, §82), is concerned with the taking of land for the location of railroad tracks.[5] In drafting the legislation, the General Court chose language, viz, “any land within such location,” which suggested that the reach of the statute was limited to the land upon which the track was physically sited. Whether Paquette’s land was in a location necessary for the operation of the railroad is a contested fact. The expert witnesses presented during the instant hearing focused their testimony upon whether the Order of Taking included Paquette’s parcel. There is no suggestion that the Paquette parcel was included in the taking by the railroad, and the issue confronting this court is whether the railroad location description necessarily extinguished the easement that it crossed.
We begin with the proposition that, when the railroad company filed a location plan with the county commissioners in 1871 under Rev. Sts. c. 39, §75, the filing was not a taking, but was merely evidence of a taking. Hazen v. Boston and Maine Railroad, 68 Mass. 574, 577 (1854). Hazen further observed, with respect to the location of the land taken, that:
The right acquired by the [railroad] corporation, though technically an easement, yet requires for its enjoyment a use of the land, permanent in its nature, and practically exclusive. The filing of the location is the act of taking the land. Charlestown Branch RR v. County Commissioners, 7 Met. 78. The location, when so filed, constitutes the written, permanent, record evidence of the land taken. It sets off by metes and bounds the land subjected to the servitude.
Hazen, 68 Mass. at 580. The import of Hazen is that the land described in the location plan is an easement as delineated in the plan. In the case at bar, the Commonwealth contends that the filing of the plan essentially amounts to a taking of all of the land (including the easement by necessity) in the path of the railroad. Paquette resists that view.
There are two cases upon which the parties rely for their respective positions, New York & N.H.R. Co. v. Board of Railroad Com’rs, 162 Mass. 81 (1894), and Cooley v. Boston and Maine Railroad, 303 Mass. 371 (1939). Neither precedent is itself determinative of the issues at bar because the instant railroad strip was not contiguous to the Paquette parcel, a critical element in both of the cited cases. The cases do, however, convey a broad under lying principle, applicable here, concerning easements by necessity.
1. New York v. Board of RR Com’rs
New York involved three landowners whose land had been split by the construction of a railroad in 1877 which was leased to the petitioner corporation for a term of years. The corporation took a warranty deed from each of the landlords as to the land over which the tracts passed. In each case the railroad constructed a farm crossing over the railroad; the crossings were operative until 1891 when they were closed and the landowners were thus excluded from their land by the railroad company.
In 1892, the Legislature created a statute requiring the railroad commissioners to order any railroad company to construct a railroad crossing if the railroad has cut off access to another’s land. In determining the company’s challenge to the commissioner’s order so to construct, the Supreme Judicial Court noted that:
By way of each of the landowners a warranty deed was given, which says nothing about a right of way across the land conveyed. But it is familiar law that, if one conveys a part of his land in such form as to deprive himself of access to the remainder of it unless he goes across the land sold, he has a way of necessity across the granted portion. This comes by implication from the situation of the parties, and from the terms of the grant when applied to the subject matter.
New York, 162 Mass. at 83. The Court also recognized that the presumption of an easement by necessity prevails over the ordinary covenants of a warranty deed.
In its discussion of the rights of a landowner whose access to part of his land had been blocked by the railroad, the Court analogized the land sold for a railroad with land sold in an ordinary sale and found no difference in the law’s treatment of each transaction: “We find nothing in the law in regard to the use of railroads which controls the ordinary presumption that, when one has sold a narrow strip of land through his farm, the parties expect him to have a passageway across the strip to reach his land beyond, if he has no other means of access to it.” New York, 162 Mass. at *4 84. The Court also observed that common practice at the time was either for the landowner, whose land has been cut, to petition the county commissioner to order the railroad corporation to construct a crossing or for the railroad corporation to buy the remaining land that the landowner could no longer access.
New York involved warranty deeds that were silent as to the grantor’s right of access to land that had been thus split. Because the deeds were silent, the Court found that an easement by necessity was necessarily implied because a railroad would otherwise, and sub silentio, block the grantor’s access to his unconveyed land. Id.
In the case at bar, by contrast, the 38-acre parcel in question was not split in half. Furthermore, when the railroad was constructed in 1871, there was no warranty deed given by the owner of the 38-acre parcel.[6] The New York case nonetheless, stands firmly for the proposition that a railroad cannot block one’s access to part of his land without compensation even though there is a warranty deed given by the owner. Despite the factual distinguishability of New York, its recognition of the broad presumption in favor of access to landto wit, “Railroad companies cannot justly complain about being compelled to allow persons a convenient opportunity of using and enjoying their property, where there has been no agreement, and no consideration for an agreement, to give up the use of it," New York, 162 Mass. at 85is persuasive guidance for the matter sub judice.
2. Cooley v. Boston and Maine Railroad
Cooley was an action in tort by decedent’s administratrix to recover for his death which occurred as he drove over a private crossing of the defendant’s railroad. The dispositive issue in the case was whether the defendants owed Cooley a duty of care, but a subsidiary question focused upon who had the right to use/own the railroad crossing.
The railroad corporation constructed the railroad running east and west in 1880 and it bisected both the “Coburn land” and the “Ellis land.” There was a crossing on ihe Coburn land. There was no crossing on the Ellis land and the only way Ellis could obtain access to his land north of the Railroad was by using the Coburn crossing. Cooley involved two landowners, both of whose land was bisected by the railroad. Coburn exercised his right to petition for a crossing, and Ellis used the Coburn crossing to access the northern portion of Ellis’ land. The railroad corporation had been granted a deed in fee for the railroad purposes across the Coburn premises, the grantee agreeing in the deed that it would construct a crossing. There was no corresponding deed to the Ellis land. Both the Ellis land and the Coburn land changed ownership a few times. The Supreme Judicial Court decided that, "these facts fail to show a right of way over the Coburn crossing for the benefit of the Ellis land.” Cooley 303 Mass. 371 at 374.
At bar, the Commonwealth relies upon Cooley as standing for the proposition that a “railroad taking extinguished all easements as a matter of law.” (Comm. Closing Arg. p. 5.) At first glance certain language in the the Cooley opinion does appear to suggest that proposition: “In general, when land is taken for a railroad, and no right of crossing is reserved in the location or ordered by the county commissioners, it is not subject to such a right, even if without it an owner will be cut off from access to his land.” Cooley, 303 Mass. at 375, quoting, Googins v. Boston & Albany Railroad, 155 Mass. 505, 506 (1892). The next line in the Court’s opinion, however, demonstrates the inappropriateness of the Commonwealth’s assumption: “The damages awarded to the landowner include this element of loss.” Cooley, 303 Mass. at 375.
The essence of the Cooley decision is its holding that the landowner whose land is bisected by the railroad must either apply to the county commissioners for a crossing or receive compensation for the loss of the use of part of his land. If the landowner does not pursue either option, he thereby waives his right to an easement, and cannot later claim right to an easement by necessity. Cooley does not, therefore, disturb the precedential value of the New York ruling.
The fundamental distinction between New York and Cooley on the one hand and the case at bar on the other, is that, in New York and Cooley, the land claiming the easement had been bisected by the railroad and the cases thus involved land adjacent to the Railroad. The cited cases establish that, when a railroad bisects one’s land, the law affords the owner the opportunity either to petition the county commissioners for a crossing or to receive compensation for the land that was blocked. Thus, one who owns land adjacent to the railroad does not, by reason of the taking necessarily forego access to her remote land. At bar, Paquette’s land was not adjacent to the railroad track and its 1871 owner did not, therefore, have the opportunity to petition the railroad for a crossing. The Commonwealth cannot now maintain that the 1871 owner eschewed the alternatives available to him to obtain access to his land on the far side of the tracks and thus was, by waiver, deprived of his easement. The 1871 owner of the 38-acre parcel had no such alternatives. The easement survives as to the present plaintiff.
CONCLUSION
This Court finds that the railroad plan filed with the Worcester County Commissioners in 1871 did not extinguish the easement by necessity enjoyed by the 38-acre parcel. The plaintiffs property remains favored to this day with an easement by necessity to Princeton Street.

The instant proceeding is akin to a declaratory judgment trial; however, the results hereof will be employed in the resolution of the underlying eminent domain action.

This Court has garnered the following facts from the Agreed Upon Issues of Fact submitted to this Court and signed by both parties, and from the evidence presented at the hearing.

November 28, 1831 represents the day that the parcel at issue in the proceedings at bar was created.

This Court will not value the property at this time as that is a question not fully presented by the instant record. Value will, of course, be impacted by this court’s determination of access vel non.

General Laws Chapter 160, §82 provides: “After the location of the railroad has been finally determined under the two preceding sections, the corporation may take any land within such location by eminent domain under chapter seventy-nine.”

The only deed given to the railroad company was a deed from Flagg. In 1881, Flagg (who owns the land between Paquette and the Railroad) gave the Massachusetts Central Railroad Corporation a warranty deed that did not mention the Paquette easement by necessity to Princeton Street. Paquette, under New York, argues that when the railroad company acquired the land in fee, this created an implied easement by necessity and that, because the warranty deed does not mention the easement, Paquette’s easement by necessity was implied. New York is not controlling on the point, however, because, in New York, the landowner’s farm was split, after which the landowner gave the warranty deed. In the present case, the owner of the 38-acre parcel did not participate in any transaction with the railroad company. The owner of the 38-acre parcel was not a party to the deed “out” to the railroad company. The Commonwealth does not claim that the deed extinguished the easement by necessity. This Court finds, therefore, that the 1881 deed did not affect the easement by necessity to the 38-acre parcel.