[Civil No. 2547.   Filed February 7, 1927.]

[252 Pac. 1012.]

INSPIRATION CONSOLIDATED COPPER COMPANY, a Corporation, Appellant, v. E. R. BRYAN and JULIA BRYAN, Appellees.

304

Messrs. Rice & Mathews, for Appellant.

Mr. Alexander B. Baker and Messrs. Struckmeyer, Jennings & Strouss, for Appellees.

LOCKWOOD, J.—Riley Bryan, as administrator of the estate of Allen Bryan, deceased, brought suit under the Employers' Liability Law of Arizona (Civil Code 1913, pars. 3153–3162), against Inspira-

tion Consolidated Copper Company, a corporation, hereinafter called defendant, for damages for the death of Allan Bryan. After a trial which resulted in a verdict in favor of the administrator, the trial court set the verdict aside and rendered judgment for defendant. This judgment was affirmed by this court on appeal in 20 Ariz. 485, 181 Pac. 577, but was reversed on rehearing, reported in 23 Ariz. 541, 205 Pac. 904, and 24 Ariz. 47, 206 Pac. 402, and the trial court was directed to permit the parents of deceased, E. R. Bryan and Julia Bryan, hereinafter called plaintiffs, to enter the suit by filing an amended complaint and to enter judgment in their favor upon the verdict recovered by the administrator. The trial court, having so done, set aside the verdict and judgment so entered and granted a new trial. This order was affirmed by this court in 27 Ariz. 188, 231 Pac. 1091. The action was then tried in the lower court on the amended complaint filed by plaintiffs and defendant's general denial, and the jury returned a verdict in favor of plaintiffs for $7,500. The usual motion for new trial was denied, and defendant has brought the case before us for review.

There are some twenty-one assignments of error. The first two refer to the admission of the testimony of Riley Bryan concerning the cause of decedent's death, and the failure to strike it on motion after its admission. It appears from the record the witness testified that the death was caused by an accident, which was the falling of a transmission line tower. It also appears the witness was not present at the accident, and had no knowledge as to where Allen Bryan died or the cause of his death, except what somebody told him. This evidence was objected to at the time of its presentation, and a motion was duly made to strike it after it had been admitted. The court in ruling on the motion to strike said:

"As counsel well know on both sides, the court in admitting this evidence did so in the face of an accepted rule of evidence and to relieve the harsh situation that is presented previously by the record here. The motion to strike is denied."

That the act of the court in first admitting and then refusing to strike the evidence referred to above was error needs no discussion or citations. It was the rankest hearsay, and recognized to be such by the trial court. The harshness of a situation does not permit a court to disregard the law. In view, however, of the testimony of all the other witnesses in the case, upon this point, and the entire absence of any evidence that Allen Bryan was not killed at the accident testified to by them, we think the only reasonable and logical conclusion which the jury could have reached, even in the absence of the erroneously admitted evidence, was that Allen Bryan came to his death through the fall of a steel-framed tower in the manner set up in the complaint. Nor can we agree with appellant that the jury from the erroneously admitted testimony gathered the idea that deceased was properly engaged in his employment at the time of his death, or that the death was not caused by his own negligence. Were this the only error in the case, we should not reverse it on this ground alone.

The third and fourth assignments of error refer to the testimony of the witness Ezra Vineyard in regard to who paid him for the work which he did in the construction of the transmission line in question, and where he got the material which he hauled for such work. We think this evidence was entirely proper as bearing on the question of who was in charge of the construction of the transmission line. His statement that the men who helped him load his wagon with supplies were employees of the Inspiration Copper Company was an expression of

opinion and should have been excluded. It was admitted by defendant, however, that it had furnished these supplies, so the error was probably harmless.

The fifth and seventh assignments of error are of the same class, to wit, the statement of the witness Munroe as to his employment by defendant. His answers on this subject were as to his opinion, and not as to a definite state of fact, and are governed by the same rule as the statement of opinion by Vineyard. The error, though, was much more serious than with the latter. Munroe was timekeeper on the very job where decedent was working at the time of the accident. If he were in truth an employee of defendant, the natural inference would be that the men whose time he kept were such also. When, as in this action, the most important issue in the case is, who was the employer of decedent, an expression of opinion which might otherwise be immaterial and harmless may become of considerable importance. In this case plaintiffs must necessarily, so far as the evidence before us is concerned, rely, not upon positive testimony of employment, but upon circumstances from which the inference of such employment may be drawn. Such being the case, the court should be particularly careful that incompetent testimony on this point should not be admitted.

So far as the sixth assignment of error is concerned, we think the answer, in regard to the general duties of the towermen was properly admissible. While it originally referred to a period prior to 1914, the date of the accident, yet it is presumed the general duties would be the same in 1914 as just prior thereto.

The eighth assignment of error refers to the testimony of the witness Munroe in regard to a notice posted in the cook wagon, to the effect that the men on the job were not working for the Reclamation Service, but for defendants. This notice, witness

stated, originated with Fitch, who was the project manager of the United States Reclamation Service. Defendant objects upon the ground that neither the original notice nor a copy thereof was produced nor was their absence accounted for; that it was not shown to have come to decedent's attention; that it did not emanate from defendant, and was not written or posted with defendant's knowledge, consent or ratification. We are of the opinion the failure to produce the original notice or a copy thereof was satisfactorily explained; nor was the fact that it was not called to the attention of Allen Bryan material. If it was admissible and material on the question of whose employee Bryan actually was, it makes no difference whether he knew of it or not. If this evidence had been offered by plaintiff in chief, it would have been inadmissible, being at best the declaration of a third party as to whom he thought was the employer of the men on the job. Plaintiffs, however, contend that even though inadmissible in chief, it was properly offered in rebuttal of a certain memorandum introduced by defendant and emanating from the same person. Defendant offered a letter signed by Fitch for the purpose of showing the latter's understanding of the situation was that the Reclamation Service was the employer of all men engaged on the project. To contradict this it was certainly proper to show by a later statement coming from the same authority that the men employed were, to his understanding, not in the employ of the Reclamation Service.

The ninth, tenth and eleventh assignments of error deal with the admission of the transcript of the testimony of certain witnesses, given at the prior trial where Riley Bryan as administrator was plaintiff. This was admitted under the provisions of paragraph 1679, Revised Statutes of Arizona of 1913, Civil Code, which reads as follows:

"1679. Whenever in any court of record the testimony of any witness in any civil case shall be phonographically reported by an official court reporter and certified by him to be correct, and thereafter said witness shall die or be beyond the jurisdiction of the court in which the cause is pending, and his absence is not procured by the party offering the evidence, either party to the record may read in evidence the testimony of said witness in any subsequent trial of or proceeding had in the same cause, subject only to the same objection that might be made if said witness were upon the stand and testifying in open court."

It is urged, first, that the testimony of these witnesses was not given in the same cause, within the meaning of the paragraph, but in a cause in which the parties and issues were wholly different. We think that under the decisions of this court on the previous appeals of this matter above cited the cause was the same within the meaning of the statute.

It appears the witness Hicks was absent from the state at the time of the trial, but that he was expected to return shortly. It is the contention of defendant that this statute is one of the most rigid in the United States, and should therefore be strictly construed, and that the absence referred to in the statute must be a permanent one. The premise may be true, but if so it is all the more reason that in the interest of justice the construction of the statute should be liberal. Its object is to supply a method of producing evidence before a court which is material and admissible, but which cannot otherwise be obtained. We think that in view of this obvious and salutary purpose we should construe the statute so as to effect that purpose and not to defeat it. It appears the statute provides only that the witness must be "beyond the jurisdiction of the court" before his testimony can be received, and we do not

think it is our duty to write in the word "permanently."

It is also urged that since the witness Munroe was actually within the state at the time of the trial, his testimony was improperly admitted. When the deposition of an absent witness is offered under the statute, the party so offering it must make preliminary proof of the facts permitting the use of the secondary evidence. The provision of the Penal Code of 1913 (section 1052) was discussed by us in *Valuenzuela* v. *State*, 30 Ariz. 458, 248 Pac. 36, and we there laid down the rule that such preliminary proof should be made by witnesses testifying in the trial, and confronted and cross-examined by the opposite party. When such proof is presented, the court must determine the question as any other issue of fact. The same rule applies to paragraph 1679, *supra*. The decision must necessarily be based on the evidence appearing before the court at the time, and the mere fact that after the trial it appears from further evidence the court was mistaken as to the facts does not affect the validity of the decision. We think the trial court did not err on the showing made in admitting the deposition of the witness Munroe. As to whether a new trial should be granted for this cause would depend on whether it was shown the testimony of the witness, if personally present would differ on material matters from his previous testimony. If it would not, the mistake of fact would not be sufficient ground for a new trial.

The next two assignments of error refer to the refusal of the trial court to permit defendant's witness Mills to testify as to his conversation with the chief electrical engineer of the Reclamation Service, Ensign, in regard to the construction and completion of the work. We are of the opinion this evidence was properly rejected as hearsay.

The fourteenth, fifteenth and sixteenth assignments of error go to the refusal of the trial court to allow the witnesses Donahue and Mills to testify as to whether or not defendant was reimbursed by the United States government for the amount of money the former had expended upon the pay-roll and material. We think this was erroneous. Plaintiffs necessarily relied to a great extent for proof of decedent's employment upon these payments made by defendant. It was certainly highly material to defendant that it be allowed to explain why such payments were made, and that they were only advances to the government for which it was reimbursed, if such was the fact.

The seventeenth and eighteenth assignments are directed against certain instructions given by the trial court. These instructions are based on the theory that the work in which it was alleged by the complaint decedent was engaged at the time of his death was the construction of a "pole line" within subdivision 7, paragraph 3156, Revised Statutes of Arizona of 1913, Civil Code; it being the contention of defendant that the complaint endeavored to set up a cause of action only under subdivision 3 of said paragraph. These two subdivisions read as follows:

"(3) The erection or demolition of any bridge, building or structure in which there is, or in which the plans and specifications require, iron or steel frame work."

"(7) All work in the construction, alteration, or repair of pole lines for telegraph, telephone or other purposes."

We have examined the complaint carefully and are of the opinion it sets up a cause of action under both subdivisions.

It is plain, on reading the whole of paragraph 3156, that many occupations may fall under two or more subdivisions thereof, and it is proper in such

case to plead the facts, leaving it for the court to instruct as to the statute applicable. Defendant admits that the structure on which it is alleged Bryan met his death was built for the purpose of supporting a transmission line used for carrying high-tension electric power, but claims that the steel towers on which it was carried were so large that their size took the structure out of the definition of a pole line. It is true that the definition given by most authorities to the word "pole" would not include a 100-foot steel tower; but we do not think the legislature, in providing as it did in subdivision 7, *supra,* was governed by the size or material of the support used, but was considering the danger from any elevated wire carrying electric current, and that regardless of the size or material of its individual members, any continuous series of structures intended and used solely or primarily for the purpose of supporting wires carrying electric currents is a pole line within the definition of the statute. While it was error not to instruct also on subdivision 3, *supra,* yet since the error favored defendant it cannot complain thereof.

The nineteenth assignment of error deals with the refusal of the court to give the following instruction:

"In determining whether Allen Bryan was in the employ of the defendant on January 14, 1914, the true test is whether the defendant company at the time of the accident had the right to direct and control the details of the work in which Allen Bryan was engaged and to direct and control him in the performance of that work. In applying this test, you may consider all facts and circumstances in evidence in the case. In determining who had the right to direct and control the work in which Allen Bryan was engaged and direct and control him in the performance of that work, you may consider who hired Allen Bryan, who had the power to discharge him, who fixed his wages, who determined the hours of work, who directed him what to do and

how to do it, and who paid his wages, if there is evidence of these matters in the case. (*In determining who paid his wages you are not to be concluded by the fact, if it be a fact, that he was paid by checks of the defendant company, but you should consider all of the facts and circumstances shown in the case, if any, explaining why payment was made in such a manner, and whether the defendant company issued its checks for its own account or for the account of the United States, and whether the defendant company was to be reimbursed therefor by the United States.*) If, after considering all of the evidence, you find that the defendant company did not have the right to direct and control the details of the work in which Allen Bryan was engaged on January 14, 1914, or to direct and control Allen Bryan in the performance of that work, then you must find that Allen Bryan was not in the employ of the defendant, and your verdict must be for the defendant.

"Indorsed: Given as modified.

"C. C. FAIRES, Judge."

The portion of the instruction inclosed in parentheses was struck out by the trial judge and the remainder given. We are of the opinion that the portion rejected, in view of the circumstances of the case, was not only proper but necessary to be given in some form. When, as in this case, plaintiffs depend for their proof of one of the essential issues, not on direct evidence but on an inference to be drawn therefrom, the jury should be instructed that in determining the correct inference they should take into consideration all the evidence bearing thereon, and it would not have been a comment on the evidence for the court to call to the attention of the jury the matters referred to in the excluded portion of the above instruction.

The twentieth assignment of error is the refusal of the court to give the following instruction:

"You are instructed that the plaintiffs in this case, under the law, must establish by a preponderance of evidence, that the death of Allen Bryan was not caused by the negligence of Allen Bryan. By negligence is meant the failure to use ordinary care in view of all of the circumstances existing at the time and shown in the testimony. Negligence may consist in the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do under the circumstances. The defendant company is not required to explain this accident or to make any proof on the question of the negligence of the deceased. The burden of proof on that question, as upon all other material issues in the case, rests upon the plaintiffs. Unless the plaintiffs have established, by a preponderance of evidence, that the death of Allen Bryan was not caused by his own negligence, your verdict must be for the defendant.

"Indorsed: Refused.

"C. C. FAIRES, Judge."

The instruction requested was a correct statement of the general law applicable to cases of this nature. If plaintiffs wished to have presented to the jury the qualification of this doctrine laid down by us in the cases of *Calumet & Arizona Min. Co.* v. *Winters,* 25 Ariz. 483, 219 Pac. 585, and *Crozier* v. *Noriega,* 27 Ariz. 409, 233 Pac. 1104, it could have requested an instruction on these lines.

The twenty-first and final assignment of error is that the superior court erred in denying defendant's motion for a new trial. It appears from what we have said before that there were many errors committed during the trial of the case. Briefly, the first, second, fifth, seventh, fourteenth, fifteenth, sixteenth, nineteenth and twentieth assignments of error are well taken; the remainder are not. It is urged by plaintiffs that notwithstanding the fact, which is practically admitted by them, that some errors were committed during the progress of the

trial, yet they were of such minor importance that a new trial should not be granted. It is obvious to us, after a careful reading of the briefs and evidence and listening to the oral arguments, that the real issue in the case is whether or not defendant was the employer of decedent at the time of his death. As we have stated before, plaintiffs' evidence was not direct as to the employment but was of facts from which an inference of employment could and would probably be drawn by a fair-minded jury, in the absence of any explanation thereof, and, if standing alone, was ample to support the conclusion which evidently was reached by the jury on the issue.

On the other hand, the explanatory evidence in the case, both that which was admitted and that which was improperly rejected, is consistent only with the fact that the defendant was not in any sense decedent's employer, or, as suggested by plaintiffs, a joint adventurer with the Reclamation Service. Under these circumstances it was necessarily highly prejudicial to defendant that any evidence properly admissible and bearing on this issue should be excluded, and it was equally prejudicial that the court should not properly and carefully instruct the jury in regard to the law of inferences.

It is more than twelve years since this cause of action arose, and the matter should have been settled long before this time. We regret extremely that we are not able to dispose of the case finally at the present time, either by affirmance of the judgment or by a reversal with instructions to dismiss the action. We cannot in justice to both plaintiffs and defendant so act. Since the case must be retried, we desire to call the attention of both parties to one matter which it seems to us might definitely and finally determine the issue of employment. The record is full of references to a contract under and by virtue of which it is apparently claimed by both parties the

transmission line in question was constructed, but for some reason unknown to us, both plaintiffs and defendant carefully refrained from presenting this contract before the trial court and the jury. If as a matter of fact such a contract does exist, and the work was carried on in pursuance thereof, it seems to us that upon the production of the contract and proof that the work was conducted in accordance therewith, there could be no question as to the issue of employment, which, as we have indicated, seems to be the vital one of this case.

For the foregoing reasons the judgment is reversed, and the cause remanded to the superior court of Gila county, with instructions to grant a new trial.

ROSS, C. J., and McALISTER, J., concur.