[Civ. No. 2650.   Filed February 6, 1928.]

[263 Pac. 936.]

JACK EASTLICK, Appellant, v. HAYWARD LUMBER AND INVESTMENT COMPANY, a Corporation, Appellee.

Mr. William H. Westover, for Appellant.

Mr. A. J. Eddy and Mr. Lemuel P. Mathews, for Appellee.

McALISTER, J.—This action was instituted by the Hayward Lumber & Investment Company, a corporation, against E. B. Keelen, doing business as the Keelen Sales Company, and Jack Eastlick and W. H. Howe, doing business under the firm name of Howe & Eastlick. The purpose of the suit is to collect three notes, and, the plaintiff having prevailed at the trial, the defendant Eastlick appeals.

It appears that the Hayward Lumber & Investment Company, a California corporation, entered this state in 1917 for the purpose of engaging in the lumber business in the towns of Yuma and Somerton. At that time it made T. L. Lane of Yuma its statutory agent, but, on January 1st, 1924, he left the state permanently, and no other appointment was made until May 19th, 1925, when E. L. Simpkins, its Yuma manager, was appointed. In January and February, 1925, lumber was delivered by the company to E. B. Keelen upon the credit of W. H. Howe and Jack Eastlick, who were at the time in its employ. Thereafter Keelen executed three promissory notes totaling $735.32, the cost of the lumber, the payee in each being the Hayward Lumber & Investment Company, and delivered them to Eastlick, who, a few days later, was transferred to the company's Los Angeles office. Just before leaving for California, Eastlick placed the notes in a pigeon hole in a desk in the office of the company, where they were later discovered by the bookkeeper who showed them to the manager, Simpkins, and he delivered them to

Howe, stating as he did so that the company would not accept them without the signatures of himself and Eastlick. On May 23d, following, Howe signed the three notes "Howe & Eastlick, by W. H. Howe," indorsed them in the same manner, and delivered them to Simpkins. They were not paid; hence this suit.

There are several assignments, but they are treated under two propositions, the first one being that the failure of the corporation to appoint a statutory agent within four months from the time T. L. Lane left the state resulted in the loss of its right to do business in the state until another agent was appointed, and therefore placed it beyond the corporation's power to enforce payment for lumber and material sold and delivered between May 1, 1924, the expiration of the first four months of Lane's absence, and May 19th, 1925, the day Simpkins was made its agent. This contention is based upon the provisions of paragraph 2229, Revised Statutes of Arizona, Civil Code, 1913, which reads as follows:

"Should any agent so appointed absent himself from the county in which his appointment is filed for a period of three months consecutively, and no other agent be appointed for said corporation within four months after the commencement of such absence of such agent, the right to transact business by the corporation represented by such agent shall cease, and all acts or contracts performed or made thereafter shall, at the option of any person interested, be declared null and void."

It is the defendant's contention that under this statute all contracts entered into by the plaintiff company during the period in which it had no statutory agent (except the first four months) are absolutely void at the option of the interested party, and that, inasmuch as Eastlick, the interested person in this case, saw fit to exercise his option to have the agreement to pay for the lumber declared null

and void, the court has power to enter an order to this effect and none other. The language used would seem to justify such a construction, and, if the notes had been executed prior to May 19th, 1925, that is, before the company had complied with the statute by appointing another agent, this contention would be more forceful than under the facts of the case as now presented. The company, it is true, had no agent when the lumber was sold, but did have when the notes were executed and delivered, and this, of course, had the effect of restoring its right to transact business in the state. Such being true, the parties were then in a position to enter lawfully into the contracts evidenced by the notes, and if, as plaintiff claims, the action of Eastlick in executing and delivering the notes constitutes a waiver of his right to raise the question of plaintiff's failure to comply with the law in this particular, it follows that he is estopped from relying upon such failure as a defense.

The option to have declared null and void any contract entered into with a foreign corporation at a time when its right to do business in the state has ceased can be exercised or not as the person who has dealt with the corporation under these conditions thinks best, because this right is given for his benefit, and there is nothing in either the language or policy of paragraph 2229 prohibiting him from living up to his contract and declining to exercise his option. The corporation's failure to appoint another agent does not render its contracts made during this period void, unless the other interested party wishes it to; neither does such failure, after an agent has been appointed, prevent the latter from entering into a binding contract to live up to an obligation incurred at a time when this right did not exist. While it is wholly the privilege of the party dealing with the corporation to rely upon his right to have the contract declared void or decline to do

so, it is not required that this choice be made only in an answer to a complaint brought against him for the debt. He can do it just as effectually before suit as afterwards, and it occurs to us, that, if he delivers to the corporation at a time when its right to do business is unquestioned a promissory note, the consideration for which is the indebtedness contracted by him when the corporation had no agent, he in reality exercises his option, and thereby waives his right to have the agreement declared void.

There would seem to be no escape from this conclusion, because the original contract is not then void, but merely voidable, the option not having been up to that time exercised, and, since a pre-existing debt, even though the person obligated to discharge it may be exempt from doing so by operation of law, forms a sufficient consideration for a promise to pay, it follows that the execution and delivery of the notes under such circumstances is an exercise of the option, and estops the person making this choice from thereafter pursuing a course of action inconsistent therewith. Their maker is in much the same situation as one who delivers his note in payment of a debt barred by the statute of limitations, and the general rule governing such a situation is stated in 3 Ruling Case Law, page 934, paragraph 129, in this language:

"It is well settled that, where there is a pre-existing obligation to pay, either legal or equitable, which cannot be enforced, and the party executed a note therefor, notwithstanding he may be exempt from all liability by operation of law, the former liability, in connection with the honesty and rectitude of the thing, form sufficient consideration to support the promise. And as familiar illustrations of this principle, and its application, the cases of promises to pay debts barred by the statute of limitations, and those to revive debts discharged by the operation of bankrupt or insolvent laws, may be cited."

The situation is not the same as it would have been had the plaintiff been doing business in the state without ever having appointed an agent therein. In that instance, the original contract would have been void under paragraph 2228, Revised Statutes of 1913, which provides specifically that all acts of a foreign corporation shall be null and void until it complies with the law by doing certain things among which is the appointment of an agent. Under such a provision it is probable that no action the defendant could have taken would have given the transaction in which the lumber was sold validity, and the numerous authorities cited by appellant holding this way arose under requirements of this kind. But these decisions are not in point where the statute makes contracts of this character void only at the instance of the interested party, and some courts, even under provisions rendering them absolutely void, hold that by certain acts they can be ratified, and the party estopped from setting up their invalidity. *St. Louis Union Trust Co.* v. *Chicot County Cotton-Alfalfa Farm Co.*, 127 Ark. 577, 193 S. W. 69. In 14a Corpus Juris, 1307, appears this statement:

"It is held, however, that where such a contract has been made, and the corporation subsequently by compliance with the statutory requirements is freed from disability, the parties to the contract may make a new contract and recognize the void agreement as embodying its terms."

The other proposition relied on by appellant is that he is not liable on the notes, for the reason that the judgment is based upon the assumption that he and W. H. Howe were copartners at the time the notes were executed by the latter, when in fact they were not. The court upon disputed testimony found the facts to be such as to satisfy it that they were copartners from January, 1925, until some time after the notes were executed and delivered on May 23d following. It appears that Eastlick wanted to lease

from one Modesti a lot upon which to build a service station, and that he asked Howe to go in with him in the venture upon an equal basis. The latter agreed, and the lot was leased from Modesti, but in the name of Eastlick only, though Howe thought the names of both appeared in the lease, and advanced sixty dollars to pay ground rental. They subleased the lot, or a part of it, to E. B. Keelen, who agreed to build the station, but the plaintiff refused to let him have the lumber on his own credit, though at the instance of Eastlick agreed to furnish it upon the account of Eastlick and Howe, and the material was charged to them on the books of the company. At the request of Eastlick, Keelen executed the notes in question on March 23d thereafter, and delivered them to him. The manner in which the name, ''Howe & Eastlick, by W. H. Howe,'' happened to be placed upon them, as well as the way in which the plaintiff came into possession of them, has already been stated, and it is not necessary to repeat them. The foregoing facts amply support the conclusion reached by the trial court that Howe and Eastlick were partners when their names were placed upon the notes. The fact that Howe knew when he signed and indorsed them that his name had been omitted from the lease from Modesti, as well as the fact that the testimony of himself and Simpkins, based upon such omission, that he was not a partner, is wholly immaterial, for the reason that the existence of a partnership depends upon the facts, and whether a partner draws the correct conclusion from them cannot affect its existence in the least.

The last contention is that, even though it be held there was a partnership, it is clear that it was a nontrading partnership, and in joint ventures of this kind one partner has no authority to execute a note in the firm name binding upon the other. This is the general rule, but the evidence in this

case discloses that, when Eastlick left for California, he gave Howe a power of attorney broad enough in its terms to cover the notes in question, and this fact shows that it was the intention of the parties that the rule regarding nontrading partnerships should not stand in the way of Howe's doing whatever was necessary to be done in reference to the partnership's property. No other proof that he, as a partner, was authorized to sign the notes was required.

The judgment is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.