218 P.2d 727

HUISH et al. v. LOPEZ.

No. 5107.

Supreme Court of Arizona.

May 16, 1950.

Clarence E. Houston and Darrel G. Brown, of Tucson, Greg Garcia, of Phœnix, for appellants.

Holmes & Morrison, and W. H. Quesnel, of Tucson, for appellee.

UDALL, Justice.

Appellee, Concha Torres Lopez, as plaintiff, brought suit against defendants (appellants) Carolotta Huish, her husband Owen Huish, and her niece Victoria Chaides, a single woman, for money alleged-ly had and received by them from the plaintiff and to and for her use. Plaintiff prevailed in the lower court and obtained a judgment for the full amount sued for, to wit, $2,000. It is from this judgment and a denial of their motion for a new trial that this appeal was taken.

Before considering the assignments of error we deem it advisable to set forth an outline of the essential facts out of which this controversy arose. Victoria Chaides was the owner of lot 8, block 4, Riverside Park Addition to the City of Tucson, upon which a new home had been recently constructed, the premises being designated as 752 North Grand Avenue. On May 19, 1947, the plaintiff and defendant, Carolotta Huish, entered into an oral agreement for the purchase and sale of said property and $100 was paid to bind the bargain. From the opening statement by plaintiff's counsel, as well as the evidence adduced to this point, we feel safe in asserting it was understood at all times that the latter was acting solely as the agent for her niece, Victoria Chaides, who was then a minor of the age of 20½ years. It was contemplated that the oral agreement would be reduced to writing and signed by plaintiff and Miss Chaides. There is no dispute but what the terms of the agreement were that the plaintiff was to pay $7,500 for the property, $2,000 of which was to be paid down and the balance at the rate of $75 per month with interest on deferred installments. In accordance with this agreement the plaintiff

on May 21st completed the full down payment of $2,000. She went into possession of the property on June 2, 1947, and occupied the premises for a period of two months or more, holding herself out as the owner thereof. Plaintiff had the utilities changed to her name, rearranged the shrubbery on the place, remodeled a concrete walk, took out her own insurance on the buildings and rented out for a six months period a small rear apartment to defendant Carolotta Huish for the total sum of $30.

Sometime between May 20, and June 8, 1947 (the exact date being unascertainable from the record) Mrs. Lopez and Mrs. Huish went to Edmond R. Carillo, a notary public in Tucson, and had the oral agreement reduced to writing. It was then *signed by the plaintiff* and left with the notary who was to procure the signature of the defendant Chaides. It seems obvious that had the plaintiff considered the property as belonging to Carolotta Huish the latter's name would not only have appeared in the contract as the seller instead of her niece, Victoria Chaides, but same would have been signed then and there by both Mrs. Lopez and Mrs. Huish. This agreement, later ratified by Miss Chaides after attaining her majority, actually was never signed by her though she made one trip to the notary's place of business for that purpose but he would not permit her to sign because the plaintiff was not also present. The original contract bearing the signature of Mrs. Lopez is not in evidence. However, the notary testified that it was signed by her but after difficulties arose between the parties he was induced by the plaintiff and her counsel to tear off her signature to the contract and give it to them and later he completely destroyed the original document. The trial court finally admitted in evidence, for a limited purpose only, a copy of printed form of "contract for the sale of real estate" which the notary testified was the form he had used in preparing the contract.

The issues, as framed by the pleadings upon which the case was tried, were these: plaintiff's amended complaint contained *two counts,* the first was in the form of the common-law count of indebitatus assumpsit (for money had and received) based upon the allegation that defendants had received $2,000 to and for the use of plaintiff, that plaintiff had demanded payment and no part of said sum had been paid. The second count was identical with the first except for the addition of an allegation that on June 10, 1947, the defendants had promised to pay the sum sued for to the plaintiff upon demand. By their amended answer the defendants allege that the $2,000 received by them was pursuant to the terms of a written contract for the sale of the realty and they admit that plaintiff demanded repayment of the money with which demand they had refused to comply. By a cross-claim the defendants set up the written contract of sale for the property in question, alleging the signing thereof by plaintiff, setting forth her acts of owner-

ship, alleging performance of the agreement upon their part and praying in the alternative for either specific performance or the sum of $2,000 as liquidated damages. Plaintiff's answer to defendants' cross-claim amounts to a general denial, except for the admission that she "had utilities put in her name and is now living on said property".

By its judgment the court decreed that the defendants take nothing on their cross-claim and that the plaintiff recover judgment as prayed for (with certain minor offsets that are unimportant) against the defendants Carolotta Huish and Victoria Chaides. Judgment against defendant Owen Huish was limited to his community interest (not exceeding $2,000) in the real property in question.

There are some nine assignments of error and an equal number of propositions of law relied upon by the defendants (appellants). Such of these as are essential to a determination of this appeal will be considered in such order as appears most logical.

The defendants before answer filed a motion for more definite statement as to the "legal theory upon which the plaintiff's claim is based", or for bill of particulars and joined with this a motion to take plaintiff's deposition before answer "for the purpose of discovery and for use as evidence in the action". The trial court by separate orders denied both motions and these rulings form the basis for defendants' first two assignments of error.

Under Rule 12(e), Sec. 21-433, A.C.A. 1939, a motion for more definite statement or for bill of particulars is properly presented only where the pleading attacked is so vague or ambiguous that the moving party can not frame an answer thereto, Shill v. Jones, 21 Ariz. 465, 190 P. 77; Stansfield v. Dunne, 16 Ariz. 153, 141 P. 736; Kauffroath v. Wilbur, 66 Ariz. 152, 185 P.2d 522; Brinley v. Lewis, D.C., 27 F. Supp. 313; and the words or "to prepare for trial", as used in this rule, are to be read with an effect substantially equal to the phrase, "prepare his responsive pleading". United States v. Schine Chain Theatres, Inc., D.C., 1 F.R.D. 205, 207; Mitchell v. Brown, D.C., 2 F.R.D. 325.

It appears to us that the defendants might well have answered plaintiff's count of indebitatus assumpsit, which is recognized as a sufficient pleading under the Federal Rules of Civil Procedure, 28 U.S. C.A., adopted and in force in this jurisdiction (see 1 Moore's Federal Practice, p. 555; and 3 Moore's Federal Practice, p. 3609, official form #8) by pleading the general issue of non-assumpsit. After joining issue the defendants could have availed themselves of the discovery methods provided by the Rules of Civil Procedure, chap. 21, Art. 7, A.C.A. 1939, and then if necessary at a later date amended their answer. As a matter of fact we note that both sides did amend their pleadings before proceeding to trial.

The rules in force at that time, see amendment effective April 1, 1950, did not

contemplate that defendants be permitted to take depositions for the purpose of enabling them to frame their answer, Pirnie v. Andrews, D.C., 1 F.R.D. 252, nor were defendants then allowed to take depositions before filing answer without first obtaining leave of court, Rule 26(a), Sec. 21-701, A.C.A. 1939, and it is only where the moving party has shown exceptional or unusual circumstances that the court is justified in granting such a motion. Seman v. Leibovitz, D.C., 1 F.R.D. 280, 281. No such showing was made in the instant case. We therefore conclude that defendants were in nowise prejudiced by these rules and that the trial court did not act arbitrarily or capriciously in denying either of said motions, the action taken being well within its sound discretion. See Shill v. Jones, supra; Louisiana Farmers' Protective Union, Inc., v. Great Atlantic & Pacific Tea Co., D.C., 31 F.Supp. 483.

■■ Because no findings of fact were made by the trial court—none having been requested by counsel for either party—we are left groping somewhat for the basis of the court's judgment. True, certain observations were made by the trial judge at the time he made the order for judgment but these do not rise to the dignity of findings and as it appears that the cause was probably determined on issues foreign to such comments, they are not to be considered inasmuch as they are immaterial or surplusage. Grimm v. Beard, 63 Ariz. 281, 161 P.2d 924; Ollason v. Glasscock, 26

Ariz. 193, 224 P. 284. Plaintiff however seeks to invoke the well-established rule that if there are sufficient facts in the record which would support the judgment upon any reasonable theory, then this court, as a reviewing tribunal, should presume that the trial court found such facts as were necessary to support its judgment. Collier v. Stamatis, 63 Ariz. 285, 162 P.2d 125.

■ Following out this hypothesis the plaintiff asserts there are facts in the record which entitle her to raise questions of fraud, rescission, accord and satisfaction, impossibility of performance, lack of mutuality, and the statute of frauds as being theories upon which the judgment of the trial court could be sustained. Incidentally some of these issues are attempted to be raised for the first time after the matter reaches this court. This of course can not be done as we will not review a case on a theory different from that on which it was tried below. Tevis v. Ryan, 13 Ariz. 120, 108 P. 461; Id., 233 U.S. 273, 34 S.Ct. 481, 58 L.Ed. 957.

■ It is contended by defendants that as plaintiff elected to bottom her cause of action upon a common count for money had and received she should not now be permitted to inject issues that under our rules of civil procedure must be specifically pleaded. To illustrate, the plaintiff contends that the failure of defendant Carolotta Huish to inform her that she was the agent for a principal, who was a minor, is of such material import that the failure to disclose this fact constituted constructive

fraud, however Rule 9(b), Sec. 21-414, A. C.A. 1939, requires that fraud be pleaded. It reads, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. * * *". Turning to defendants' cross-claim for specific performance or, in the alternative, liquidated damages, plaintiff's answer is tantamount to a general denial, but she now seeks to defeat recovery by urging defenses such as that statute of frauds, rescission or accord and satisfaction, etc., but under the provisions of Rule 8(c), Sec. 21-406, A.C.A. 1939, these matters must necessarily have been affirmatively pleaded as a defense. We hold that the rules of pleading, supra, must be complied with and that in the instant case plaintiff's failure to raise such issues precludes her from any reliance thereon. It was error for the trial court to permit evidence as to such matters to be introduced over the timely objection of the defendants.

The defendants' answer to plaintiff's complaint, as well as their cross-claim, are bottomed upon an admission of the receipt of the $2,000 herein sued for, coupled with the assertion that same was paid pursuant to an agreement for the sale of the property owned by defendant Chaides. However, if the defendants are to defeat a recovery by plaintiff and prevail on their cross-claim the responsibility was upon them to establish the allegations of their answer and counterclaim by showing that this contract was valid and enforceable. In our opinion they have successfully carried this burden. They affirmatively established these acts on the part of the plaintiff: an oral agreement to purchase, part performance of the purchaser by payment of a substantial sum on the contract, her going into possession and asserting ownership, making improvements upon said property and later the signing of a written agreement and its delivery to a third person, to wit, the notary public. The owner, Victoria Chaides, though a minor at the time, upon reaching her majority six months later, ratified and approved the acts of her agent, Carolotta Huish, in selling the property as well as stating her willingness to then convey good title. Assuming that her aunt, in a moment of anger, proffered to pay back to plaintiff the $2,000 received on the purchase price, there is not a scintilla of evidence that she was acting within the scope of her agency in so doing or that this act was in any way subsequently ratified or approved by Miss Chaides. As a matter of fact she expressly refused to approve of any return of the money. Hence any attempted rescission by Mrs. Huish was ineffectual. Pacheco v. Delgardo, 46 Ariz. 401, 52 P.2d 479, 103 A.L.R. 494. These well-settled principles of law control the factual situation shown in the instant case: (1) the rule as to part performance of an oral contract as stated in the Restatement of the Law of Contracts, Sec. 197: "Where, acting under an oral contract for the transfer of an interest in land, the purchaser with the assent of the vendor (a) makes·

valuable improvements on the land, or (b) takes possession thereof or retains possession thereof existing at the time of the bargain, and also pays a portion of all the purchase price, the purchaser or the vendor may specifically enforce the contract." See also Latimer v. Hamill, 5 Ariz. 274, 52 P. 364; Condon v. Arizona Housing Corporation, 63 Ariz. 125, 160 P.2d 342; (2) as to contracts entered into between an adult and an infant the rule is stated in 27 Am.Jur., Infants, Sec. 34: "Who May Avoid. The right to avoid a contract because of the infancy of the maker or one of the makers is a privilege personal to the infant, and the other party to the contract is bound thereby so long as the infant adheres to it, and for a breach of the contract by such other party the infant has a right of action. * * *" See also Williston on Contracts, Rev.Ed., Sec. 232; 43 C.J.S., Infants, § 50; Persico v. Guernsey, 129 Misc. 190, 220 N. Y.S. 689.

The court erred in its ruling that the contract was unenforceable against the plaintiff. However, in order to do justice between the parties it would seem that the plaintiff should now be permitted to elect whether to go through with the contract or suffer a forfeiture. The judgment of the lower court is therefore reversed with directions: (a) to dismiss the plaintiff's complaint, (b) to reinstate the cross-claim, (c) to require the plaintiff to forthwith elect whether she will (1) specifically perform by making the necessary back pay-

ments to put the contract in good standing, in which event Victoria Chaides is required to execute a good and sufficient deed with evidence of merchantable title to the premises and place same in escrow with a contract to be signed by both parties in the terms of the original contract, or (2) suffer the forfeiture of the contract and lose the payments already made, (d) when and if such election is made by plaintiff and an equitable accounting is had as to expenses incurred on the premises and rentals, if any, received by the parties therefrom in the interim, then to enter an appropriate judgment in favor of the defendants on their cross-claim.

Judgment reversed with directions.

LA PRADE, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concurring.