336 P.2d 854

Charles E. MERCER, administrator of the estate of Paul Dean Horton, deceased, and as administrator of the estate of Henrietta Jo Horton, deceased, Appellant,

v.

James M. VINSON and Carroll L. Rima,

Appellees.

No. 6368.

Supreme Court of Arizona.

March 11, 1959.

Rehearing Denied April 15, 1959.

Clark & Carson, Phoenix, for appellant.

McKesson & Renaud and J. Gordon Cook, Phoenix, for appellee Vinson.

Snell & Wilmer, Phoenix, for appellee Carroll L. Rima.

STRUCKMEYER, Justice.

This action was commenced by appellant as administrator of the estates of Paul Dean Horton and his wife, Henrietta Jo Horton, deceased, for their wrongful deaths caused by the inhalation of carbon monoxide gas. Appellee Vinson was the owner of a house trailer rented to the decedents which was occupied by them at the time of their deaths. Appellee Rima was the owner of a trailer park in which the trailer was occupying space. At the close of all the evidence, the trial court directed a verdict in favor of the appellees and against the appellant on the ground that there was no question of fact to be presented to the jury for its determination.

The appellant assigns as error the granting of the motion for a directed verdict for two reasons: (1) There was sufficient evidence to establish that the deaths of decedents were solely and proximately caused by the latent defects in the premises; and (2) the Gas Appliance Act, A.R.S. § 36–1621 et seq. governed the liability in that there was a failure to install a vent or flue in the gas heater of the trailer prior to the occupation by de-cedents. Since we are of the opinion that the Gas Appliance Act is applicable in that the legislature has prescribed the duty owed by the appellees to the deceased, which duty was admittedly breached, it is unnecessary to determine whether appellant's alternate theory of liability sounding in common-law negligence has any application to the facts.

The evidence is undisputed that a young married couple, Paul Dean Horton, aged nineteen, and Henrietta Jo Horton, his wife, aged seventeen, on October 16, 1952 rented a house trailer owned by Vinson. This trailer was equipped with a liquefied petroleum gas space heater. Such a gas appliance is, by definition, an appliance included within the purview of the statute A.R.S. § 36–1621. On November 9, 1952, decedents were both found dead on the bed inside the trailer, and subsequently the cause of death was determined to be carbon monoxide poisoning. The gas heater was unvented; that is to say, there was no vent or flue attached to the collar of the heater extending to the outside air above the roof line.

The Gas Appliance Act, A.R.S. subsection A of Section 36–1623 provides:

"Gas appliances designed for space heating or water heating installed or placed in tourist courts, camps, hotels and lodging houses after June 26, 1952 shall be connected to an effective

vent or flue leading to the outside air not less in size than the vent collar on the' appliance."

It is apparent from the most casual reading of this statute that if the housing accommodation rented to the decedents comes within any of the categories specified by the statute, then the undisputed evidence establishes its violation. We said in Collier v. Stamatis, 63 Ariz. 285, 162 P.2d 125, 127, that there can be no dissent from the principle very aptly set forth in Salt River Valley Water Users Ass'n v. Compton, 39 Ariz. 491, 8 P.2d 249, 251:

"Actionable negligence may be of two kinds, either statutory or common law. Where a valid statute, enacted for the public safety, or governmental regulations made in pursuance thereof, provide that a certain thing must or must not be done, if a failure to comply with the regulations is the proximate cause of injury to another, such failure is actionable negligence per se."

It is asserted that the statute has no application to this case because the gas heater was installed prior to the effective date of the Act of June 26, 1952. The testimony shows that Vinson acquired this trailer on July 2, 1952; that it appeared the heater was a factory installation and that the trailer was a 1948 model; that therefore the only reasonable inference is that the heater had been installed in the trailer long before the effective date of the Act. We reject this. A.R.S. § 36–1623 requires that gas appliances installed or placed after June 26, 1952 be connected to an effective vent or flue leading to the outside air. Assuming that the heater was installed in the trailer at the time of the manufacture thereof, nevertheless it was not placed on Rima's property until October of 1952. We think the act of placing the trailer in the tourist park also placed the gas appliance thereon, and since this was subsequent to the effective date of the Act, it was within the purview of the statute.

We do not think that one who moves a cabin or a hut or, as here, a trailer with a gas appliance in it is in a different category than a person who constructs or builds such a cabin or hut on the land and then or thereafter installs a gas appliance in violation of the statute. The Act does not contemplate a distinction based on degrees of portability. Such a distinction must be rejected because there is no basis whatsoever in the statute for it. Accordingly, it was error for the trial court to direct a verdict in favor of Vinson because irrespective of the presence or absence of Rima's liability, Vinson's action in placing the heater after the effective date of the Act in a trailer park was a violation of the Act.

■ This leads us to the appellees' next contention. It is urged that the words "tourist courts", "camps", "hotels", and "lodging houses" do not include the business in which Rima was engaged, that is, trailer parks. The answer to this is, of course, to be resolved by a determination of whether a trailer park can be categorically included within any of the enumerated words. In so far as the Act generally is concerned, it is remedial in character, being designed to protect the health and safety of persons using these classes of public accommodations. As such, it will be construed liberally to effect the legislative purpose.

A trailer park is just what the words seem to imply. It is a place where space may be rented upon which to park trailers. The statute is specifically directed to the venting of gas appliances in those types of accommodations usually considered as of a transient or temporary nature. This leads to the conclusion that in its application the statute was intended to cover accommodations primarily designed to serve those needing temporary shelter.

While we are uncertain as to the exact meaning which the legislature intended to convey by the use of the words "tourist court", it seems clear that a "camp" is broad enough to encompass a trailer park. It is defined by Webster's New International Dictionary, 2d Ed., as "the ground or spot on which tents, huts, etc. are erected for shelter, as for an army or lumbermen, etc." and "A collection of tents, huts, or other shelters, whether of temporary or permanent construction and location, commonly arranged in an orderly manner; an encampment, as, an army camp; a tourist camp; * * *." A like definition was recently stated in O'Brien v. Boston & Maine R. R., 325 Mass. 451, 91 N.E.2d 218, 220, in this language:

"* * * The primary meaning of a camp is a field or place upon which tents or buildings are located for the occupancy of soldiers. It sometimes means huts, tents or other structures designed and used for temporary shelter."

The activities associated with a trailer park are sufficiently restricted to bring them within the broad category of a camp as above defined.

■ Rima argues that he, being simply the owner of the land on which others rent space to park their trailers, cannot be responsible for the gas appliances installed in trailers temporarily coming upon the premises. With this argument we are in accord, but only to the extent as it applies generally to trailer parks and not as it applies to this particular transaction. It is to be noticed that the statute section 36-1623, supra, does not specify what persons are obliged to connect gas appliances with effective flues or vents. Responsibility for

the enforcement is, however, prescribed in A.R.S. § 36–1626 in this language:

"*Violation; penalty*

"A person failing to comply with the requirements of this article or violating any of its provisions is guilty of a misdemeanor."

The persons responsible are those who have failed to comply with the article or violated its provisions. The clear import and obvious intention of this latter section is to place the responsibility upon those who have the means to comply with or prevent a violation of the Act. Rima, as the landlord, did not have the legal control of the gas appliances in the trailers owned by those temporarily coming upon the premises. Hence, in order to establish legal responsibility in Rima as a violator of the Act, other circumstances must be shown from which the logical inference could be drawn that some control or right of control existed.

Appellant argues that appellees are jointly and severally liable for the tortious act. In answer thereto, Rima argues that he did not have possession, management, or control of the premises upon which the trailer was situated and therefore was not a joint adventurer with Vinson in the trailer rental to the Hortons. We have pointed out before, and have recently stressed in West v. Soto, 85 Ariz. ——, 336 P.2d 153, the elements of a joint adventure, and stated that it is in the nature of a partnership; that each of the parties thereto is the agent of the other and each is the principal, so that the act of one is the act of all. We also said that where there is a question of a joint adventure, each case must be decided upon its own facts, and unless the court can say as a matter of law that the parties were engaged in a joint adventure, the question must be submitted as a question of fact to the jury. Of course, the converse is true, that unless the court can say as a matter of law that the parties were not engaged in a joint adventure, it must submit the question to the jury. In the present case, we find that both the facts and the inferences to be drawn therefrom are contradictory, and therefore the trial court was required to submit to the jury the question of the relationship of the appellees to each other in this enterprise.

It is conceded by all that Rima and Vinson entered into a business agreement of some sort, the details of which were never specifically discussed. However, it is clear that Rima, having space in his trailer park, agreed with Vinson that Vinson's trailer would be placed in the trailer park and that the space and trailer would be rented for a sufficient amount to return to Rima his usual charge for such space, namely, $18.36 a month, and that Vinson would get as his share the sum of $25 a month. Pursuant to this agreement, the trailer was

placed on a space in the trailer park and it was rented by Rima to the Hortons. Rima did collect the sum of $43.36 for a month's rent in advance. While Rima testified that Vinson paid the rental on the trailer space, on cross-examination he acknowledged that the rent was actually paid by the Hortons but that *he considered* the Hortons were only paying the rent to him on Vinson's behalf. Rima further acknowledged that Vinson did not at any time directly pay him anything for the trailer space rental.

The intent of the contracting parties to form a partnership is always an essential element of a partnership relation *as between the parties themselves,* but as to third parties, the relation will be determined from the facts rather than the conclusions of the co-partners as to the nature of their business relationship. May v. Sexton, 68 Ariz. 358, 206 P.2d 573, 575; cf. Eastlick v. Hayward Lumber & Investment Co., 33 Ariz. 242, 263 P. 936. The informal agreement under which the appellees put their plan into operation did not specifically include any understanding that Rima was to be simply the agent of Vinson in renting the trailer and collecting the rent. The jury was entitled to consider the actual facts of what occurred and to draw from that the inference as to the nature of the business relationship. It certainly was not bound by the conclusions which Rima seeks to place on the facts.

The jury could also take into consideration the testimony of Vinson which admits of a contrary interpretation. He testified:

"Q. Now, did you have any understanding with Mr. Rima as to any payment you were to make in connection with the trailer? A. No, we had no definite agreement on it.

"Q. Well, what discussion did you have about that particular subject? A. Well, he advised me what he would charge for the space, which I think was around $18 and some cents. And I told him what I wanted for it, net for the trailer, which was $25. And that was the terms we were going to rent it on, and he would keep his $18 and I would get the $25.

"Q. Now, did you have any understanding as to what he would receive in the event that the trailer remained unrented for a period of time? A. We had no definite agreement on that.

"Q. Well, wasn't it, wasn't there any understanding between you and him, Mr. Vinson, if it remained unrented for a while he would make no charge for the space? A. Yes, there was a general agreement.

"Q. It was your general agreement, in other words, if the trailer was rented he would charge you for the space and you would charge for the trailer, is that right? A. If the trailer

was rented he would charge for the space and I would get my $25, that is right."

Vinson's testimony when examined in the light of the conceded facts could lead the jury to infer that the relationship of Rima and Vinson was neither that of principal and agent nor of landlord and tenant, but that of two individuals associating themselves together and pooling their mutual resources for their mutual betterment, a profit. Both assumed the risk of no profit in the event the enterprise was unsuccessful. We do not think that it is impossible for reasonable men to come to an honest conclusion that the facts as here outlined establish a joint enterprise or adventure. It is to be acknowledged that contrary conclusions may be drawn but we point out again that it is only necessary here to determine that the trial court erred in failing to submit the question as a question of fact to the jury.

■ Vinson further contends that he is not responsible for the deaths of the Hortons because a lessor of land is not liable for a defective condition which comes into existence after the lessee has taken possession. Vinson's argument is that there were three ventilators on top of the trailer which were sealed tight with cardboard by the Hortons after they took possession of the trailer. This argument and the argument that the Hortons were informed that the heater was not to be operated unless the windows and ceiling vents were open simply tend to create an issue of fact as to whether the Hortons were guilty of contributory negligence. In the one instance, the defective condition of the appliance being established, it became a question whether the sealing of the vents in the roof of the trailer constitutes an act of negligence which, joined with the appellees' negligence, contributed to the Hortons' deaths. In the other instance, the issue is whether the purported warning was sufficient to apprise the Hortons of the danger of carbon monoxide poisoning. Both are to be determined by the jury under the constitution of this state, Art. 18, § 5, A.R.S.

■ We note appellee Vinson's further argument that the complaint did not allege a violation of the Gas Appliance Act. We think it a sufficient answer to say that public statutes need not be pleaded or offered in evidence since courts will take judicial notice thereof. Inspiration Consol. Copper Co. v. Bryan, 31 Ariz. 302, 252 P. 1012; and see 41 Am.Jur. 294, Pleading, § 11.

For the foregoing reasons the judgment is reversed with directions to enter an order granting a new trial against both appellees.

Phelps, C. J., and Johnson and Bernstein, JJ., concur.

UDALL, Justice (dissenting).

It is my view that on the record presented the trial court was fully justified, as a matter of law, in directing the jury to return a verdict for both defendants. I perceive no issue of fact that could properly have been submitted to the jury.

As its primary basis for reversal, the majority finds actionable negligence per se on the part of appellees for failure to comply with the venting provisions of the Gas Appliance Act. I am firmly convinced that the legislature never intended said Act to have application to trailer parks in general nor to the particular incident here in question. It is only through tortured construction that the word "camp" used therein can be stretched to encompass a "trailer park." I submit that the Act in question contemplates a permanent type structure and does not cover an ambulatory house-trailer such as is here involved.

In this connection it is interesting to observe two things: (1) The original complaint specifically charged the violation of the Gas Appliance Act but just before trial was to begin before Judge Lorna Lockwood she granted appellees' motion to dismiss with leave to amend, and in the event an amended complaint was not filed, it was ordered that said cause be dismissed with prejudice; (2) appellant elected to amend and the amended complaint on which the case was later tried before Judge McCarthy made no mention whatsoever of said Act but based its claims for relief solely upon the theory of a failure to warn of a latent defect. This was the theory upon which the case was tried and yet the majority opinion adroitly shies away from any reference to latent defects. It thus appears to me that the appeal, contrary to all our prior decisions, is being determined upon a different theory than that presented in the court below. See Huish v. Lopez, 70 Ariz. 201, 218 P.2d 727.

There is another unsound premise inherent in the majority opinion with which I am in sharp disagreement. This has to do with the possible legal relationships created when Vinson brought his factory-built house trailer and installed it on Rima's trailer park. The Court's opinion finds that there was a conflict in the evidence and holds the trial court was in error in not submitting to the jury, as a question of fact, whether under the evidence the status thus created was (1) landlord and tenant, (2) principal and agent, or (3) joint adventurers. It is my view that in truth and in fact there is no contradiction in the testimony relative to this matter and that hence the lower court had the duty, as a matter of law, to determine what that relationship was. Furthermore its conclusion, apparent in the instructed verdict, that Rima was only a rental agent for Vinson in the leasing of the trailer, was manifestly correct.

The testimony of appellees Vinson and Rima as to their understanding relative to

this transaction—which is all of the evidence on the subject—may be succinctly summarized as follows: Vinson was the owner of a factory-made Airstream house trailer, which he primarily used in the summer time for vacation purposes. On or about October 15, 1952, Vinson came to Rima (a stranger to him), who was the owner of a 31-unit trailer park, and told him that he had this trailer which he would like to rent out during the winter months at a rental figure of $25 per month. Rima advised Vinson that he had a vacant space and the rental charge for a single trailer was $18 per month, plus tax. As this presented an opportunity for the parties to make a *separate* profit, Rima suggested that Vinson place an ad in the paper for a prospective tenant. They orally agreed between themselves that if someone came to the trailer in response to the advertisement Rima would show the trailer; that Rima would collect the rental moneys from the tenant, turning over the $25 trailer rental to Vinson and retaining for himself the amount owed by Vinson for space rental.

Very soon thereafter, Vinson brought his trailer to the trailer park and set it in the rented space. He prepared the trailer for occupancy and hooked up the various utilities. The trailer was left unlocked so that Rima could show the trailer. As a result of the ad, decedents, the Hortons, came to the trailer park on October 18th, and after inspecting the trailer in company with Rima, decided to rent it. They then and there paid to Rima the first month's rental, aggregating $43.36, $25 of which was forthwith turned over to Vinson. About a week after their occupancy, the Hortons complained to Rima about some defect in the trailer doorknob; Vinson was called and he came out and fixed it. At no time did Rima ever have a key to the trailer, nor did he exercise any control over the same. Because the Hortons died on November 9th, the issue never arose as to whether Vinson would be charged by Rima for the trailer space if the trailer was not rented, nor was there any definite agreement covering same. It is upon this skimpy evidence that the majority hold the jury would be entitled to find that a partnership (i. e., joint venture) existed.

It is obvious that the only way appellants could hope to hold Rima civilly liable in this tort action is by invoking the theory of a join adventure. To my mind many of the essential elements of "joint adventure" are lacking. We held in Smith v. Phlegar, 73 Ariz. 11, 18, 236 P.2d 749, that in the first instance this presents "a question of law for the court." There are many important tests applied in judging this relationship, but I shall only refer to three vital elements that I contend are missing from this record: First, a complete lack of showing an intent on the part of either of the parties to enter into

such a relationship. 30 Am.Jur., Joint Adventures, section 8. Second, the lack of joint control of the trailer house: Rima at no time ever had the key or exercised any control or dominion over it. See, 30 Am.Jur., Joint Adventures, sections 10 and 11. Thirdly, a fatal defect is the absence of a showing as to an agreement for the *joint sharing* of profits and losses. It is universally agreed that the expectation of making a profit is an indispensable element of a joint adventure. Furthermore, it must be a business venture for *joint profit.* 30 Am.Jur., Joint Adventures, section 2. I quote from Commercial Lumber Co. v. Nelson, 181 Okl. 122, 72 P.2d 829, 830:

"* * * a profit *jointly* sought in a single transaction by parties thereto is the chief characteristic of a joint venture. The profit accruing however must be *joint and not several,* otherwise every person, firm, or individual who furnished material or supplies or performed work or labor in connection with the enterprise might be termed joint adventurers therein whether they had any such intention or not. * *" (Emphasis supplied.)

To the same effect see Moon v. Ervin, 64 Idaho 464, 133 P.2d 933; and Fedderson v. Goode, 112 Colo. 38, 145 P.2d 981, 985. Justice Windes in writing the unanimous opinion for this court in Arizona Public Service Company v. Lamb, 84 Ariz. 314, 315, 317, 327 P.2d 998, 1000, recognized this principle:

"We have said a joint adventure is a special combination of two or more persons where in some special venture *a profit is jointly sought,* * * *.*" (Emphasis supplied.)

Applying this principle to the facts of the instant case, the conclusion seems inescapable that Rima and Vinson were not partners as they were each seeking a *several* but not any *joint* profits. That is to say, Vinson was to have every cent of the $25 trailer house rental and Rima had no share therein; on the other hand, Rima was to have as his own all of the $18.36 rental paid for the space occupied by Vinson's trailer. Hence, there is nothing *joint* in so far as profits are concerned. If the trailer was not rented for any period of time and Rima made no charge for his space, then the parties were each suffering a *separate,* but not a *joint* loss. It therefore becomes unnecessary *to speculate* whether Vinson would have been required to pay Rima if his trailer had not been rented, for even if this were true, it could not possibly change the nature of the relationship.

A directed verdict for Vinson was fully justified under the legal principles enunciated in Pena v. Stewart, 78 Ariz. 272, 278 P.2d 892.

It is for these reasons that I would affirm the judgment of the lower court.