537 P.2d 974

**ELKHART INVESTMENT CORPORATION,**
an Arizona Corporation, Appellant,

v.

**Henry E. GAZIN and Carolyn Gazin, his
wife, dba Mesa Grande Trailer
Ranch, Appellees.**

**No. 1 CA–CIV 2528.**

Court of Appeals of Arizona,
Division 1,
Department A.

July 1, 1975.

Brazlin & Tutnick, by Paul Tutnick, Phoenix, for appellant.

Laurence H. Whitlow, P.C., by Laurence H. Whitlow, Phoenix, for appellees.

OPINION

FROEB, Judge.

The single question to be determined in this case is whether the owner of a mobile home park can assert an "innkeeper's lien" against a mobile home for unpaid space rental.

The essential facts describe a typical situation occurring with increasing frequency as mobile home living becomes more popular. On April 24, 1972, Kalman and Ruth Denyes bought a mobile home from Western Coach Corporation on a retail installment contract which provided that title to the mobile home would remain in the seller until the contract was paid in full. Western Coach assigned all of its right, title and interest in the contract and mobile home to appellant, Elkhart Investment Corporation. A copy of the contract was recorded with the Motor Vehicle Department and a license certificate was issued showing Elkhart to be the first lienholder pursuant to the conditional sales

contract. There is no dispute that Elkhart had a perfected security interest in the mobile home. In April, 1972, the mobile home was moved to a rental space at a mobile home park owned by appellees, Henry E. and Carolyn Gazin, doing business as Mesa Grande Trailer Ranch. The oral rental agreement was for a month-to-month tenancy at a fixed rent per month. The mobile home had been purchased complete with furniture and appliances. Neither the Gazins nor the park manager had a key to the mobile home and had never been inside it.

The mobile home was abandoned by the purchasers in November, 1972, at which time payments under the conditional sales contract to Elkhart were in default as were those for rent to the Gazins. Elkhart informed the Gazins that it was the lienholder on the mobile home and that it wished to repossess it. The Gazins informed Elkhart that they would not permit repossession until the back rent was paid and told the company not to move it. Elkhart paid the back rent of $193.16 under protest and thereafter brought suit against the Gazins to recover the sum, together with other special damages. The Gazins answered, denying the claims, and asserted their own claim for damages by way of counterclaim. The purchasers of the mobile home, having abondoned the property, were not parties to the suit. Judgment was entered in favor of the Gazins against Elkhart on its complaint, the effect of which was to deny the Elkhart claim for reimbursement of the unpaid rent and to hold that the Gazins were entitled to assert an innkeeper's possessory lien against the mobile home. Other claims were not resolved by the judgment and are not at issue here.

The parties are in agreement that in order to prevail as against Elkhart, the Gazins must demonstrate that they were entitled to a possessory lien against the mobile home pursuant to the "innkeeper's lien" statute, A.R.S. § 33–951. The law reads:

"§ 33–951. Lien on baggage and property of guests

Hotel, inn, boarding house, lodging house, apartment house and auto camp keepers shall have a lien upon the baggage and other property of their guests, boarders or lodgers, brought therein by their guests, boarders or lodgers, for charges due for accommodation, board, lodging or room rent and things furnished at the request of such guests, boarders or lodgers, with the right to possession of the baggage or other property until the charges are paid."

In order to bring themselves within the terms of the statute, the Gazins argue that a "mobile home park" is an evolutionary descendant of what was at one time known as "auto camp." They argue that the "auto camp" branch of the evolutionary tree began with the advent of the automobile, progressed through such stages as "tourist camps," "tourist parks," "automobile tourist courts," "motor courts," "motor inns," "motor hotels," and finally, "mobile home parks." They point out that the "auto camp keepers" were added to the statute by amendment in 1929, coinciding with the development of the automobile industry and the occurrence of widespread motor car travel. They trace the geneology of "mobile homes" as paralleling that of automobile, pointing out that they had their beginnings as makeshift trailers towed behind vehicles and becoming, in recent years, mass-produced homes which are now in many cases not readily susceptible to movement.

It is a canon of statutory construction that the primary duty of a court in construing a statute is to ascertain the true intent of the legislature at the time of enactment. *Bushnell v. Superior Court,* 102 Ariz. 309, 428 P.2d 987 (1967).

We are unable to find an intent in the innkeeper's lien statute to provide the owner of real property with a lien for rent where the property rented is merely a

space of vacant land. To the contrary, each category of lienholder in the statute is provided a lien for "charges due for *accommodation, board, lodging* or *room rent* . . .". Thus, the charges to which the lien applies share in common the connotation that the lienholder is furnishing habitation to the occupant not bare ground. In view of this, we hold that a mobile home park, having the attributes of the one at issue here, cannot reasonably be considered an "auto camp" within the meaning of A.R.S. § 33–951.

Although we find the authorities cited by counsel of little precedential value in deciding this case, one decision of the Arizona Supreme Court deserves mention. In *Mercer v. Vinson*, 85 Ariz. 280, 336 P.2d 854 (1959), a provision of the gas appliance act required certain safety equipment to be installed in "tourist courts, camps, hotels and lodging houses." The case was a wrongful death action involving death by carbon monoxide. The court found that the word "camp" used in the act was sufficiently broad to include within its meaning a "trailer park." Noting that the intent of the statute was to provide safety for "those needing temporary shelter," it was construed liberally to "effect the legislative purpose." We are unable to find that the *Mercer* case is authority that the word "auto camp" as used in A.R.S. § 33–951 includes a "mobile home park." In the first place, we do not construe a possessory lien statute, in which the perfected security interests of third persons are often involved, with the same breadth as a safety statute. Moreover, transient or temporary housing was found to be a common denominator in the *Mercer* case bringing a "trailer park" within the categories used in the statute. In this case, transiency is not a factor which would link a "mobile home park," such as the one described here, with any of the categories used in A.R.S. § 33–951.

Since we have determined that the innkeeper's lien statute is not applicable against Elkhart, we therefore do not reach the question of priority of liens as between the parties.

The judgment of the trial court is reversed, with directions to enter judgment in favor of appellant consistent with this opinion.

OGG, P. J., and DONOFRIO, J., concurring.