424 P.2d 181

**STATE of Arizona ex rel. Justin HERMAN, Director, Arizona Highway Department, Appellant,**

v.

**SOUTHERN ARIZONA LAND COMPANY,** a corporation, Mary Helen Powers Gerhart, wife of Richard M. Gerhart, as her sole and separate property, Berneice Powers Roads, wife of John H. Roads, as her sole and separate property, Lawrence C. Powers, as his sole and separate property, and Pima County Treasurer, Appellees.

**No. 2 CA–CIV 286.**

Court of Appeals of Arizona.

Feb. 21, 1967.

Darrell F. Smith, Atty. Gen., Lawrence Howard, Sp. Asst. Atty. Gen., Tucson, for appellant.

Dunseath, Stubbs & Burch, by Robert C. Stubbs, Tucson, for appellees.

MOLLOY, Judge.

This is an appeal from a judgment granting a new trial in a condemnation action. A trial to a jury had resulted in a verdict which the landowner considered insufficient in amount, and, on motion for a new trial, the court entered an alternative additur order giving the state the option of accepting the additur or being accorded a new trial. The additur was rejected by the state and thereafter, the court granted a new trial. This appeal followed.

The property concerned consisted of 320 acres of land through which the Tucson-

Benson interstate highway passed in a northwest-southeast direction. To the northwest of this land, the interstate highway was being rerouted, to a location north of the old highway, and at the subject property, the new highway joined the old right-of-way, with an interchange being constructed at the joinder. In the "before" situation the subject land had approximately 2,000 feet of frontage on the north side of the highway and over a mile of frontage on the south side of the highway. In a prior condemnation action, the state had condemned the access rights to the highway along approximately 2500 feet of frontage on the south side of the highway so that as to this portion, where no land was actually taken, the case was concerned only with the access rights of 2,930 feet of highway frontage.

Of this, 455 feet was to be rendered nonaccess by the construction of a fence and approximately 980 feet was to remain with access rights to the old highway, from which the interstate traffic was removed through the relocation of the principal highway toward the north. The remaining 1,495 feet of frontage was separated by a fence from its access to the old highway, which remained the interstate eastbound lane. However, this 1,495 feet of frontage was provided access to a newly constructed one-way (eastbound) access road.

On the north side of the highway, in the before situation, there was approximately twenty-one acres of land and, of this, approximately six and one-half acres was actually taken for the construction of a relocation of the highway in question and for the traffic interchange. The trial court's alternative additur order, which resulted in the granting of a new trial, concerned only this northern parcel of land. As to this land, the jury awarded $42,500 for the land taken and found, in special verdicts, that there was neither severance damages nor special benefits as to the remaining land as the result of the taking.

The trial court's additur would have increased the value of the land actually taken in the sum of $15,000 and would have granted severance damages in the sum of $25,000.

There were only two professional witnesses testifying at the trial. The state's appraiser estimated the value of the land in the north at $42,500, opined that there was no severance damage to the remaining land on the north side of the highway, and estimated severance damages by reason of the construction of the 455 feet of fence on the south as being $4,000. This appraiser allowed no damage for the depriving of the 1,495 feet of frontage on the south from access to the main highway and placing it on a frontage road. The jury's verdict accepted in its entirety these opinions of the state's appraiser. The property owners' appraiser's estimates were substantially higher. She had estimated the value of the land taken at $132,080, the severance damages to the northern portion at $65,618, and the severance damages to the land lying to the south of the highway at $120,801.

There was no contention made below nor is there on appeal that any part of the damage suffered by the landowner was the result of noncompensable factors,[1] such as from the rerouting of traffic, and we therefore approach the problems presented as if there were no relocation of a highway involved. See Huish v. Lopez, 70 Ariz. 201, 218 P.2d 727 (1950).

The principal reason expressed by the state's appraiser as to why the remaining portion to the north had suffered no severance damage was that by reason of the "unique" nature of the interchange in question and the particular location of the remaining property in relation thereto, the property would be ideally suited for a combination motel, restaurant and service station similar to those established by several national chains. In the before situation, according to this appraiser, the land

---

1. See State ex rel. Herman v. Wilson, 4 Ariz.App. 420, 420 P.2d 992 (1966), for a discussion of non-compensable items of damage in a condemnation action.

had only such value as pertained to all other land along this highway of which there was ample similar property available. He was of the opinion that in the before situation the land was most suitable to be sold in parcels for potential commercial purposes. He conceded that in the after situation the property could not be used as a truck stop, but saw no special value in the property for this purpose.

The property owners' appraiser, conversely, contended that in the before situation the northern parcel was ideally suited for a truck stop, that there was a market for it for this use, and that in the after situation it was unusable as such. According to the property owners' appraiser there was no demand for the remaining parcel as a combination motel and restaurant.

The two appraisers differed also as to the comparability of sales of smaller parcels of land along the subject highway. The state's appraiser contended that larger parcels of land such as those under consideration should have lower value than the smaller parcels of land sold with frontage along the highway. He contended that in buying larger parcels, the buyer always contemplates making a profit in subdividing. The property owners' appraiser, on the other hand, accentuated the concept of "plottage increment," which gives greater value to property by reason of a larger area. According to this appraiser, modern-day commercial uses along a major highway require larger areas than previously, and larger parcels will often sell for more, proportionately, than smaller parcels.

The first question presented for review is the legal question of whether a trial court can grant a conditional additur in a condemnation action. In contending that there is no such power in the trial court, the state relies upon Article 2, Section 17, Arizona Constitution, A.R.S., which provides in part:

" * * * which compensation shall be ascertained by a jury, unless a jury be waived as in other civil cases in courts of record, in the manner prescribed by law."

The property owner has pointed out in its brief that the cases cited by the state, denying the power of additur to a trial court under similar constitutional provisions, hold that the trial court's powers in this regard are limited, if it is dissatisfied with the amount of the jury's verdict, to granting a new trial, i. e., State ex rel. O'Brien v. Brinker, 169 Wash. 79, 13 P.2d 63 (1932), and Bennett v. Jacksonville Expressway Authority, 131 So.2d 740 (Fla. 1961).

In its reply brief, the state acknowledges that the question of additur:

" * * * is probably really a moot question at this particular point."

With this statement, we agree. The state failed to accept the additur suggested by the trial court, and a new trial has been granted. The additur has been forced on neither party and hence neither party has been injured by the order. Under these circumstances, we can see no violation of the constitutional provision quoted above. The new trial granted, which presumably will be to a jury, is a sufficient satisfaction of the constitutional requirement. General Petroleum Corp. v. Barker, 77 Ariz. 235, 269 P.2d 729 (1954); Pacific Guano Company v. Pinal County Land Company, 1 Ariz.App. 34, 399 P.2d 122 (1965).

The state further contends that a jury's verdict in a condemnation suit should be accorded greater respect by the trial judge than a jury verdict in an ordinary case, and that the ordinary rule for granting a new trial for insufficiency of the evidence is not applicable in an eminent domain suit where the jury has returned a verdict assessing monetary damages to the property owner. The state cites City of Los Angeles v. Cole, 28 Cal.2d 509, 170 P.2d 928 (1946), and In re City of Renton, 61 Wash. 330, 112 P. 348 (1910), as authority for its contentions. The constitutional provisions guaranteeing a jury trial in eminent domain

proceedings in the states of California[2] and Washington[3] are similar to our own Arizona provision.[4]

■ We cannot accede to the distinction which the state attempts to establish ·between the right to a jury trial guaranteed in most civil cases[5] and the constitutional right of having damages fixed by a jury in a condemnation action. In most jurisdictions there is no substantial difference made between granting a new trial for insufficiency of the evidence in a condemnation action as opposed to ordinary civil actions:

"§ 448.—New Trial.

"The trial court has a wide discretion in granting a new trial in a condemnation case. It is held that where the court is dissatisfied with the verdict in eminent domain proceedings, the court has not only the authority but also the duty to set the verdict aside and grant a new trial. Similarly, it is held to be the duty of the trial court to set aside a verdict in eminent domain and grant a new trial where it appears to the court that the verdict is inadequate under the evidence. So, where the evidence in the record is insufficient, vague, and improper, as to just compensation, a new trial will be ordered."

27 Am.Jur.2d Eminent Domain § 448, p. 364.

See also 30 C.J.S. Eminent Domain § 372(8), p. 414.

It is stated in 18 Cal.Jur.2d Eminent Domain § 333, p. 64, that:

"§ 333.—Discretion of Court; Power to Change Award on Denial of Motion.— The granting of a motion for a new trial in condemnation proceedings rests within the discretion of the trial judge, and an appellate court will not interfere with the decision of the trial court in the absence of a clear abuse of discretion."

And at p. 65 of this same work it is stated:

"Even where there is a jury trial on the issue of compensation or damages, it is within the power of the court, on the motion of the defendant for new trial and with the consent of the plaintiff, to deny the motion and instead to increase the amount of compensation awarded by the jury to make it conform to the evidence."

18 Cal.Jur.2d Eminent Domain § 333, p. 65.

The Washington and California cases cited by the state are distinguishable from the instant case. In the case of In re City of Renton, supra, the city condemned the appellant's right to take water from a certain creek, and the jury returned a verdict for $1.00. The appellant moved for a new trial. This motion was denied, and the appeal followed. In that case the Supreme Court of Washington in affirming the trial judge's action in denying the motion stated:

"The court below, in the case at bar, correctly thus states the law in his ruling as set forth. He does not hold the verdict is contrary to the weight of the evidence, but announces that he differed with many of the witnesses. This would be no reason for any interference with the verdict, unless he went further, and was of the opinion that it was clearly contrary to the weight of the evidence."

112 P. at 349.

The California case, City of Los Angeles v. Cole, supra, does not concern itself with the problem before us. That case involves the denial of a motion to set aside the verdict rendered in a retrial of a condemnation action, and to reinstate a jury verdict from a previous trial. In *Cole,* the California Supreme Court held that the property owners were estopped from questioning the verdict rendered on retrial because the property owners had joined in a stipulation requesting that the case be set for retrial.

---

**2.** California Constitution, Art. 1, § 14.

**3.** Washington Constitution, Art. 1, § 16.

**4.** Arizona Constitution, Art. 2, § 17.

**5.** Arizona Constitution, Art. 2, § 23.

We have found no case which supports the state's contention that the trial judge in setting aside a jury verdict in an eminent domain proceeding is held to a substantially different standard than that which the judge must abide by in an ordinary civil case. The law is well established in this jurisdiction that the determination by the trial court that a verdict is against the weight of the evidence, thus meriting a new trial, will not be upset on appeal unless " * * * the probative force of the evidence clearly demonstrates that the verdict of the jury is correct, * * * " State ex rel. Morrison v. McMinn, 88 Ariz. 261, 262, 355 P.2d 900, 901 (1960), or, as expressed in other words, unless the order granting a new trial is " * * * unreasonable and a manifest abuse of discretion," Caldwell v. Tremper, 90 Ariz. 241, 245, 367 P.2d 266, (1962).

Applying this test to the evidence presented to this court, we see no basis upon which this court could hold that the acceptance by the jury of the lowest estimates presented by the state as to the damages sustained was so clearly right as to render the action of the trial court a manifest abuse of discretion. The differences of opinion between the appraisers presented here are typical of those requiring resolution by the trier of fact in a condemnation action.

The last question presented is whether the trial court erred in granting a new trial as to all issues, rather than limiting the new trial to the question of damages to the northern parcel, singled out in the additur order of the court.

We have previously expressed ourselves on the possibilities of reversing a trial court's order granting a new trial on all issues, as opposed to granting only a partial new trial. In re Thompson's Estate, 1 Ariz.App. 18, 398 P.2d 926 (1965). We can conceive in a condemnation action, when completely separate parcels of land are involved, that it might be an abuse of discretion to grant a new trial as to a parcel of property, when there is no real question as to the correctness of a jury's verdict as to the particular parcel. The allowance of no damage whatsoever for the removal of 1,495 feet of frontage from direct access to an interstate highway, substituting therefor access to a frontage road, does not strike this court as being clearly correct. Accordingly, we do not make an exception to the general rule that on appeal we will not disturb the trial court's discretion in ordering a new trial as to all issues. Judgment affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.